'Covenant.

# Dickey vs Thompson.

.Case 76.

### Error to the Scott Circuit.

*Mortgages.   Contribution by purchasers of mortgaged property.*

:*February* 1.   CHIEF JUSTICE EWING delivered the opinion in this case before his resignation, but it was suspended until this term, when CHIEF JUSTICE MARSHALL delivered the opinion with the additional suggestions which appear under his name.

*(Case stated.*

M. W.. DICKEY borrowed from Charles Thompson a large sum of money, in 1833, and to secure the payment thereof, executed to him a mortgage upon certain lots in Georgetown, and two slaves, John and Leah. In 1834, Dickey sold, by absolute sale, the slave John, to Morehead, who the next year, sold the same to T. S. Theobald. In 1837, Dickey, by like absolute sale, sold certain tavern lots embraced in said mortgage, to Herndon, and in like manner, the slave Leah was sold to Isabella Dickey. Numerous payments having been made on the mortgage debt, but a considerable residue remaining unpaid, in 1840 Thompson filed his bill against the representatives of Dickey, the mortgagor, and against the vendees and possessors of the several parcels of property sold as aforesaid, to foreclose the mortgage and sell so much of the property as was necessary to pay the mortgage debt.

'Decree of the   The Chancellor below decreed a sale of so much of
'Circuit Court.   the property as was necessary to pay the residue of the
                  debt and costs, first selling the slave Leah, purchased by Isabella Dickey, as the last parcel sold by the mortgagor or his representatives; next the tavern lots, and lastly the slave John, in the possession of Theobald, as the first parcel of the mortgaged property sold by the mortgagor.

From this decree Isabella Dickey has appealed to this Court, and insists that the burthen of the mortgage debt should have been distributed ratably among the different purchasers, according to the value of the par-

cel purchased by each, and that the value should be estimated at the date of the mortgage.

In the case of *Morrison's adm'r.* vs *Beckwith*, (4 *Monroe*, 76,) this Court say "that it is a well known principle, that a mortgage binds every part of the land it covers, and each spot is subject to its operation, and where it is made to bear on purchasers of different parcels from the mortgagor, they are bound to contribute only in proportion to the value of the share that each holds." And in the case of *Hughes* vs *Graves*, (1 *Littell*, 319,) this Court decides in substance, that when slaves mortgaged are afterwards sold to different purchasers, they are all liable in the hands of the respective purchasers, to the payment of the mortgage debt, but as between the purchasers, equity will enforce contribution on principles of equality between them. And in the case of *Burk et al.* vs *Chrisman et al.* (3 *B. Monroe*, 50,) where a lien was reserved in a deed of conveyance to secure the payment of the consideration, which is not dissimilar in principle to a lien secured by a mortgage, this Court decide that each claimant of a portion purchased, took it *cum onere*, and was, therefore, subject to contribution according to the value of his parcel.

The same principle of equality in the distribution of the burthen, is settled in the case of *Stevens* vs *Cooper*, (1 *Johnson's Chy. Rep.* 430.) In the latter case Chancellor Kent uses the following language: "It is a doctrine well established, that when land is charged with a burthen, the charge ought to be equal, and one part ought not to bear more than its due proportion, and equity will preserve this equality, by compelling the owner of each part to a just contribution," and refers, in support of this principle, to Sir Wm. Herbert's case, (3 *Coke*, 14,) and *Harris* vs *Ingledon*, (3 *P. Williams*, 98–99.) And the same equitable principle is recognized and established in the case of *Cheesbrough* vs *Millard*, (1 *Johnson's Chy. Rep.* 415.) And it is further settled in the same case, that the rule of contribution between the parties as purchasers of different lots, must be the actual relative value of the different lots. The same principle of equality in the distribution of the burthen,

---

*Margin notes:*

DICKEY *vs* THOMPSON.

*Morrison's ad'r.* vs *Beckwith*, (4 *Monroe*, 76,) and *Hughes* v *Graves* (1 *Littell*, 19,) cited and approved.

Where land is charged with an incumbrance, each party should bear its proportion of the burden, and the owner of each part must contribute. (3 *Coke*, 14; *Harris* vs *Ingledon*, (3 *P. Williams*, 98-9; 1 *Johnson*, 415.) The contribution should be according to the actual value of the different lots.

DICKEY
vs
THOMPSON.

is broadly laid down as an unquestionable principle, in (1 *Story's Equity*, 464,) and the authorities referred to in support of it.

In view of these authorities and others which we will not stop to refer to, we are satisfied that the burthen of the mortgage debt should not have been thrown exclusively upon the last purchasers, but should have been distributed ratably among all, according to the value of the property held by each.

The burthen cannot be thrown upon the last purchaser of last lot of the mortgaged property, each gives a full price and expects the mortgagor to pay off the incumbrance.

Each of the vendees purchased absolutely, paid a full price for his purchase, and expected, no doubt, that the mortgage debt had or would be paid by the mortgagor, and that each would acquire an absolute estate in the parcel purchased. Either being disappointed, should not be made to bear the entire loss of his purchase, but only to bear the burthen of the unpaid debt, equally, according to the value of the parcel acquired by him. Though each purchased absolutely, neither could acquire more than the equity of redemption in the parcel purchased, and cannot complain if he obtains by the decree the equity acquired, upon terms of equality with others, who acquired the equity in other parcels of the property mortgaged.

If any part of mortgaged property remain in the hands of the mortgagor, that is first to be subjected, before any purchaser of another part is to be required to contribute.

It is true that if a portion of the mortgaged property remains undisposed of in the hands of the mortgagor, who has sold absolutely, other parcels to others, the Chancellor, in foreclosing and selling the mortgaged estate, will first sell the estate which remains in the mortgagor's hands in satisfaction of the mortgage debt, if to be had, or compel the assignment of the mortgage to the purchaser, or subrogate him to the lien of the mortgagee upon the property so remaining, for his indemnity, in case the parcel purchased by him is subjected to the mortgage debt. But the principle of subrogation is an equitable principle, which may be well applied in favor of a purchaser against the mortgagor, who sold and whose duty it was to pay the debt and release his vendee from liability; but will not be extended so far as to do injustice to others who equally innocent with the first purchaser, have paid a full price, and expected equally with the first, to hold the property acquired, free from

the incumbrance, and upon whom no undertaking had been made or liability rested, to pay the mortgage debt.

Again; though the property remaining in the mortgagor's hands, will be subjected to the payment of the mortgage debt, before going upon the property sold and warranted to a vendee, yet he has no *lien* upon it, by virtue of his purchase of a distinct parcel, which attaches to the property retained, or will follow it into the hands of a purchaser. The equitable rule is enforced against him upon the principle of his estoppal, by his own deed of sale, and to avoid a circuity of action, neither of which applies to a second vendee.

It is not to be understood that cases may not occur of actual notice by a second vendee, of a prior sale and subsisting and unsatisfied charge upon the property mortgaged at the time of his purchase, or that acts indicating a combination with the mortgagor, or bad faith on his part, may not subject the property acquired by the the same second vendee, to equitable charge that it might be subjected to in the hands of the mortgagor. But merely, that in the absence of satisfactory evidence of bad faith, and as a general rule, the burthen should be borne ratably by each vendee. And on the subject of notice, though the recorded mortgage is constructive notice in a contest between the mortgagee and subsequent purchasers from the mortgagor, yet it is not notice of a prior purchase, nor can be deemed notice for any purpose in a contest between distinct purchasers from the same individual. Nor can the recording of the deed evidencing the first purchase, be deemed constructive notice to any greater or further extent than to secure the vendee against any creditor or subsequent purchaser of the same property, embraced in the deed.

The cases of *Clowes* vs *Dickenson*, (5 *Johnson's Chy. Rep.* 242,) and *Gill* vs *Lyon*, (1 *Johnson's Chy. Rep.* 447,) are cases of judgment liens and sales under execution, in which the extent, effect and operation of such liens and sales, upon prior and subsequent purchasers of distinct parcels of the property of the debtor, are considered and determined, and are clearly distinguishable

Dickey
vs
Thompson.

from the case under consideration. And if they were not, they are in conflict with the principles heretofore settled by this Court, as well as by the same learned Chancellor, as applicable to purchasers from the mortgagor of distinct parcels of the property mortgaged.

Nor is there any principle settled in the case of *Winfrey* vs *Williams' executors, &c.,* (5 B. Monroe, 430,) to which we have been referred by the counsel of the appellee, that at all conflicts with the principles settled in this case. A recurrence to the facts of that case will show that the principles involved and questions settled, are wholly different from the case before us.

But there is some diversity in the opinions of Courts in relation to the *time* at which the valuation shall be made, of the several parcels purchased from the mortgagor, with a view to the equalization of the burthen of the mortgage debt among the several purchasers.

This Court, in the case of *Morrison's administrator* vs *Beckwith,* (4 Monroe, 76,) fixes the *time* at the date of the mortgage. And in this they follow the lead of Chancellor Kent, in the case of *Stevens* vs *Cooper, supra.* in which the same time is fixed. But all these cases were cases of the mortgage of land only, and in which the fluctuation of price as to each parcel might be regarded as about equal, and a valuation at either time could make no essential difference in fixing a standard to equalize the burthen of contribution. But in the case of *Burk et al.* vs *Chrisman et al.,* (3 B. Monroe, *supra.*) this Court sustained the decision of the Circuit Court fixing the value at the time of the several purchases. And in the case of *Cheesbrough* vs *Millard,* (3 Johnson, supra., the Chancellor says, "that the rule of contribution between the parties as owners of the different lots, must be the actual relative value of the lots." From which we understand the *relative value* at the *time* when estimated.

When real and personal estate or slaves are embraced in the same mortgage, and parcels of each sold to different purchasers, a valuation at the date of the mortgage, or at the date of the several purchases, might operate very unequally and unjustly upon purchases made at

In equalizing the burthen to be borne by purchasers of different parts of land encumbered by mortgage or other lien, the value at the date of the mortgage has been regarded as the proper period at which to fix the valuation: *Stevens* vs *Cooper,* (1 John. Chy. Rep. 425.) —But in *Burk, &c.* vs *Chrisman.* (3 B. Mon.) this Court sustained a valuation at the date of the several purchases. The actual value of the lots or parcels when estimated: (1 John.

And when real and personal estate or slaves are embraced in the mortgage, and parts sold to dif-

different and remote periods from each other. So by reason of the fluctuation in the value of property, the standard of value, if fixed at the date of the several purchases, might be very unequal. A slave in his prime at the date of the mortgage, might.be worn out at the time of his purchase, or when the mortgage was foreclosed, and one who was young and of little value, might at the two latter periods, be greatly increased in value. So a female slave who had no.issue at the date of the mortgage, might or might not have a child or children at the date of the purchase, and a numerous brood at the time of foreclosing the mortgage. As the mortgagee can make out of the several parcels sold, only its value at the time of the foreclosure and sale, including the issue of female slaves, though they be born after the date of the mortgage, and has no right to the issues and profits while the property mortgaged is permitted to remain in the hands of the mortgagor or his vendee, especially before notice of such claim, it would seem to us to be the most just and equitable, as a general rule, to estimate the value of each parcel at the date of foreclosure. By this rule each purchaser may be made liable to no greater burthen than the amount that could be made out of the property, had it remained in the hands of the mortgagor at the date of the foreclosure, and to a ratable share of such amount according to the then value of his purchase.

CHIEF JUSTICE MARSHALL's opinion.

UPON a reconsideration of this case and an examination of such of the additional authorities referred to on the last argument, as are within our reach, we are brought to the conclusion that however we might decide the question, if it were now *res nova* in this Court, or if it were one of theory merely, the principle that among purchasers of different portions of the mortgaged estate, the common burthen should be borne ratably, has been too often acted upon and announced by this Court, to be now abandoned. In the case of *Hughes* vs *Graves*, (1 *Littell*,) this principle is clearly stated as applicable to the case, pages 319-20, but without reference to authority. In the case of *Morrison* vs *Beckwith*, (4 Mon-

*Margin notes:*

DICKEY *vs* THOMPSON.

ferent purchasers, it is more equitable to apportion the responsibility of the different purchasers by the value of the property at the date of foreclosure.

The doctrine that different parts of property mortgaged shall be liable, in the hands of different purchasers, to the mortgage debt, is too well established by repeated decisions and recognitions by this Court, to be now overturned, independently of the equity of the principle itself: See (1 *Mon.* 76; 3 *J. J. Marsh.* 45; 3 *B. Mon.* 50.)

*roe*, '76,) it is expressly stated as a well known principle, by which the case is to be governed in the further proceedings directed by the mandate, that the purchasers of different parcels of the mortgaged estate, should contribute to the removal of the burthen ratably, after first exhausting the residuum, if any, remaining in the hands of mortgagor himself. The recognition of this equity against the mortgagor, without giving to it any effect as between the purchasers from him, is a negation of such effect; and the failure in laying down the principle to distinguish between prior and subsequent purchasers from him, when the case itself of different sales by the mortgagor, carries with it the idea of sales at different times, and when the Court, in making the supposition that the whole estate may have been sold by the mortgagor, evidently supposes a sale of one part after another, is a denial of all effect to the fact of priority or succession of the sales, in the application of the principle, which in this last case is stated with a reference to the case of *Stevens* vs *Cooper*, (1 *Johnson's Chy. Rep.* 430.) In the case of *Poston* vs *Eubank*, (3 *J. J. Marshall*, 45,) the same principle is expressly announced with a reference to the cases of *Stevens* vs *Cooper* and *Morrison* vs *Beckwith*. And this annunciation even if unnecessary for the decision of the case then before the Court, was a recognition of the correctness of the principle and of its authority as a rule of equity. And in *Burk* vs *Chrisman*, (3 *B. Monroe*, 50,) in a case directly involving the rule of contribution among purchasers of the incumbered estate, this Court again reasserts the same principle of ratable contribution in proportion to the values of the several parcels, and approves of its actual application as made by the inferior Court.

It is true the question was not discussed in any of the opinions referred to in this Court, and so far as authority is referred to, it seems to have rested upon the case of *Stevens* vs *Cooper*, which has either been differently understood or disregarded by the Chancery Court of New York in its modern decisions. But even if the principle as announced in *Stevens* vs *Cooper*, and as acted on without variation by this Court, were wrong

See *Story's E-quity*, 661, *note* 1 and 3, and authorities there cited.

in theory, it has, by repeated recognition and announcement from this Court, acquired the character and weight of a rule of property. And being received and understood as such by the community, a different rule, however just in theory, could not now be adopted with reference to actually existing cases, without doing actual practical injustice. But the opinion of Chancellor Kent in *Stevens vs Cooper*, the opinions of this Court, first without reference to that case, and afterwards in recognition of its authority, and the opinion of Judge Story in disapprobation of the more modern cases in New York and elsewhere, going upon the principle that the different parcels of the incumbered estate are to be charged in the inverse order of the several transfers of them: (2 *Story's Equity, Ju. Ed*. 1846, *pages* 660-661, §1233,) would be entitled to great weight and to the gravest consideration, even if the question were now to be settled upon the principles originally applicable to it.

We are of opinion, however, that the question should be considered as no longer an open one in this Court. And, therefore, without going into any further discussion, either of the principles involved or of the authorities bearing upon it, (a reference to which will be found in note 1 and 3, *Story's Equity, page* 661,) we adhere to and adopt the former opinion of this Court as delivered by the late Chief Justice, to which we only add, that in estimating the value of the several parcels of real estate at the time of foreclosure, the enhancement produced by improvements placed thereon in good faith, by the purchaser from the mortgagor, should not be included.

Wherefore, the decree is reversed and the cause remanded for further proceedings and decree in conformity with this and the former opinion.

*Robertson, J. H. Daviess and Boyd* for plaintiff; *Robinson & Johnson* for defendant.