CHANCERY.

*Case* 89.

June 13.

Case stated.

## Helm's Administrator *vs* Young, &c.

### APPEAL FROM THE HARDIN CIRCUIT.

· *Principal and surety.   Mortgage securities.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

THIS bill was filed by B. R. Young and J. Craddock, to enjoin the enforcement against them of two judgments in favor of H. P. Helm, on the ground that they were sureties in the notes on which the judgments had been obtained, and that they were released by reason of indulgences allowed without their consent or knowledge, and in consideration of usurious interest, &c.

It appears that T. M. Yates, acting for himself and his brother, V. Yates, borrowed $1,000 from Helm, ($500 for each of them,) and delivered to him the two notes for $550 each, payable in one year, signed by himself, V. Yates and the two complainants, his own name being first in one of the notes, and that of V. Yates in the other. The $50 was added in each for one year's interest, and Helm required in addition, $25 in store goods, which was shortly afterwards paid by T. M. Yates, for both, and which made the entire interest 12½ per cent. The notes were dated on the 24th of April, 1840. When they became due, Helm having boarded at the house of T. M. Yates to the value of $100, each note was credited by $50 on that account, by agreement between Helm and T. M. Yates, who then further agreed that there should be further indulgence on both notes until the 25th of April, 1842, for which, in addition to the interest running upon the notes, T. M. Yates agreed to pay extra interest in boarding, and executed a writing of the following import: "1841, April 25th. Due H. P. Helm, $75," (afterwards corrected by credit of $6, reducing it to $69,) "to be taken out in boarding, &c." at $2 per week for himself, and the same price for his horse, time of absence to be deducted, and Helm to keep the account, &c. At the end of the year, in April, 1842, a similar arrangement was made between the same parties, for waiting one year longer; but the obligation of Yates for $69 in boarding, &c., though dated on the 25th of April, 1842, was not in fact executed until February, 1843. At which time the same parties had a settlement of the boarding, which according to the account and settlement, amounted to between $140 and $150, which Yates says he then gave up for his two obligations for board, &c., which Helm delivered to him receipted in full at that date, and at the same time executed and delivered to Yates a writing by which he agreed, and obligated himself to wait with the Yates' and Young and Craddock, on the two notes, until the 25th of April, 1843. And the suits were not in fact brought upon the notes until after that day

HELM's ADM'R.
vs
YOUNG, &c.

An executed contract for indulgence made by the principal obligor with the obligee, will be a release of the surety. (1 B. Monroe, 325.)

The agreement for indulgence at the end of the first and second year, did not operate to release the sureties, because those agreements being executory on both sides, and being void as to Yates, were not binding upon Helm, who might therefore have sued at any time. *Tuder* vs *Goodloe*, (1 *B. Monroe*, 322.) If after full or partial performance on the part of the debtor, by paying the usurious interest before the expiration of the promised indulgence, there had been no new promise by the creditor to wait for the period previously agreed on, then the question would arise whether, although the agreement when made, and while it continued executory on both sides, was not binding upon either party, it did not become obligatory upon the creditor by the subsequent performance of the debtor, accepted by the creditor. But as there was in this case a new promise by the creditor, based upon full performance by the debtor, the question just stated does not arise, but the question is whether the new promise made upon a consideration actually executed or performed by the debtor, was not binding upon the creditor. We think this question must be answered in the affirmative, and that consequently the arrangement for delay, so far as it was made without authority or sanction of the sureties, operates in equity as a release to them: *Keningham* vs *Bedford*, &c., (1 *B. Monroe*, 325.)

The case of *Anderson* vs *Mannon*, (7 *B. Monroe*, 217,) differs from the present case in this, that the credit upon the debtor's account against the creditor, formed but a part (about a fourth,) of the consideration of the promise of indulgence, the residue of which consisted of the note of the debtor, payable in future, and the Court decided that even if the case as to the credit, fell within the principles of *Keningham* vs *Bedford*, (that is, if the credit was an executed consideration,) and was voidable only by the debtor, still as the note, which made a part of the entire consideration, was utterly void, the contract was not in equity obligatory upon the creditor. Nor does the Court in that case decide, that if if the credit had constituted the entire consideration of the promise of indulgence, that prom-

ise would have been unobligatory, although a portion of the reasoning then used, tends to that conclusion, and it may be implied that such was the opinion of the Court, the case is decided upon the other point.

But if the actual crediting of a prior account of the debtor against the creditor, should be regarded as a mere promise not to collect it, and as an executory consideration absolutely void, and therefore insufficient to make the creditor's promise of indulgence binding on him, there is still an important distinction between such a case and the present one, in which, to the extent of the two obligations of Yates for boarding, his services and supplies to Helm were not rendered for the purpose of creating a demand against Helm, or a debt from him, which might be credited, for it does not even appear that Yates kept any account against him, but they were rendered and received as performance of the agreement and obligation of Yates, which constituted the original consideration of Helm's original promise of indulgence, and the performance of which constituted the consideration of his renewal, or confirming of that promise. And it is to be observed, that while Helm executes receipts upon the two obligations of Yates for furnishing the boarding, we hear of no receipt by Yates for the price of the boarding, and not even a book account to be credited. There seems, indeed, upon the settlement of the account as kept by Helm, to have been a small excess of about $9 against him, but there seems to have been no particular disposition made of this excess. And we infer from the statement of the witnesses, that the entire boarding after the 25th of April, 1841, was considered and treated as a discharge of the two obligations of Yates, or of his agreement to furnish boarding as the consideration of the promise of indulgence. Yates took in his obligations as being discharged by the boarding furnished. Nothing was said about the excess, and we cannot regard it as forming any essential part of the consideration of Helm's new promise as changing its character as a promise founded on an executed consideration, and therefore binding on him.

*The creditor agreed with the principal debtor to indulge without the consent of the surety and to receive the price of indulgence in boarding—took an obligation for the boarding, received satisfaction and surrendered the obligation—Held that this was a release of the surety.*

HELM'S ADM'R.
vs
YOUNG, &c.

Yates, it is true, had the right to avoid this transaction, by which his services and supplies rendered to Helm were applied to the payment of usurious interest; but he would have had the same right, if upon pre-payment of the usury in money, Helm had promised to indulge. And if, as decided in Keningham against Bedford, such a payment in money, though voidable by the debtor is a sufficient executed consideration, making the promise of indulgence binding on the creditor, so must the pre-payment of the usury in boarding furnished and received as the price of indulgence be a sufficient executed consideration to make the promise founded upon such pre-payment equally binding. And as it does not appear that the sureties, Young and Craddock, were apprized of any part of the arrangement before its final consummation, or that they even authorized or sanctioned it, they are entitled to be relieved from their obligation as sureties in the two notes to Helm.

The arrangement having been made throughout by T. M. Yates, he of course is not thereby discharged from the note in which he was only the surety of Valentine Yates. And on the other hand, as the facts fully authorize the conclusion that T. M. Yates had authority from V. Yates to act for him at discretion, and as he acted for himself in the management of the entire debt to Helm, we are of opinion that V. Yates was not released from his suretyship on the note of T. M. Yates, and that so far as the arrangements made with Helm relate to the note of V. Yates, they are entitled to the same effect in all respects as if made by himself in person, with the assent of his surety, T. M. Yates, but without the assent of the other sureties, for whom T. M. Yates had no authority to act, and as to whom Helm dealt with him at his own peril.

—But a surety who was assenting to such arrangement and indulgence, is not discharged.

It appears, however, that before the notes for the money borrowed from Helm had become due, and therefore before any of the promises of indulgence had been made, Young had taken two mortgages together, covering all or nearly all the property of T. M. Yates. The first mortgage recites various debts due from Yates

Where a surety has a mortgage from his principal for his indemnity, though the surety may be exonerated by indulgence of the

to Young and others, in which Young was the surety of Yates, and is conditioned to be void on payment of all the debts named, and on saving Young harmless, &c. The second mortgage, including additional property, states that its object is further to secure the debts, &c. named in the first, and also to secure other debts and liabilities afterwards recited in the second. The note of T. M. Yates to Helm for $550, in which Young was surety, is mentioned in the first mortgage as one of the debts secured thereby, and is consequently also secured by the second mortgage. And according to the principle established by the case of *Moberly* vs *Moore, &c.* (7 *B. Monroe*, 299,) so far as that debt was valid and not paid by Yates, it was entitled to a *pro rata* distribution of the proceeds of the two mortgages—that is, it was entitled to a rateable payment out of the first mortgage, with all other debts therein named, so far as they were not otherwise satisfied by Yates. And it was entitled to a similar rateable payment out of the second mortgage, with all other debts secured thereby, so far as not otherwise discharged by Yates. And so far, at least, as the mortgaged property was controlled or disposed of by Young, the mortgagee, or went to his benefit, he is liable to make good this rateable contribution, to which the debt to Helm was entitled. This right attaching to the debt as secured by the mortgage, and the liability of Young as mortgagee, was not discharged by the subsequent transaction between Yates and Helm, which in equity released Young from his liability as surety. And we think this liability of Young extends to the rateable portion of the value of two slaves, which had been sold by Yates for $1,000, with the assent of Young, and with his release of the mortgage title. All of which we understand to have occurred before the promise of indulgence in February, 1843, if indeed that fact be material.

It is necessary then, so far as Young is concerned, to enquire whether any part, and if any, how much of the note of T. M. Yates remains unpaid. It is not pretended that there was any payment by Yates, except the $25 in store-goods, the $100 in boarding before the note

HELM'S ADM'R.
*vs*
YOUNG, &c.

principal given to the debtor by the creditor, yet the mortgaged property will be liable, and if other debts be also provided for by the mortgage, to a *pro rata* contribution.

became due, which was credited equally on both notes, and the subsequent boarding, which to the extent of $138, was furnished and received at $4 a week, as the price of indulgence on both notes, was afterwards, in February, 1843. settled between the parties as amounting to $147. These arrangements were made with the assent of V. Yates, and for him as well as for T. M. Yates, who proves that V. Yates paid him the $50 credited on the note for the first year's interest, and also one half of the $25 paid in store goods. We are of opinion, therefore, that only one half of these two sums, viz: $62 50, should be applied as credits to the note of T. M. Yates, and that the residue should be credited on the note of V. Yates, that is, $12 50 on each, at its date, as reducing the sum loaned and due, to $487 50, on which interest should be charged from the date of the note, and $50 as paid thereon at the end of the year. There was nothing in this record to show that Helm owed T. M. Yates more for boarding at the end of. the first year, than the $100 which were credited on the two notes. There was no oppression in the price of boarding at $4 a week for man and horse, nor in the agreement that there should be a deduction for absence, and that Helm should keep the account of absence. The parties settled. The presumption is that the settlement was fair and without mistake, and that if the boarding amounted to more than $100, the excess was otherwise satisfied. The same observation apply to the subsequent settlement of February, 1843. And as we do not perceive that either settlement is successfully, if at all, impeached, we are of opinion that Helm was improperly charged in the commissioners' report and in the decree, with boarding at $4 a week, without deduction for absence. The sum of $147 found to be due for boarding by the parties themselves, should have been credited on the debt of T. M. Yates, and nothing more after the first year, unless it had been satisfactorily shown that there was a mistake or fraud in the settlement, or at least that the boarding at the price agreed on, amounted to more after deducting absence. And vague general proof on this point, is not sufficient.

It is evident that upon stating the account according to these principles, something will remain due on the note of T. M. Yates, for which V. Yates is liable to the whole extent, and Young for a rateable portion as above indicated—and the credit of $12 50 and $50, should be applied to the debt of V. Yates, as before suggested.

Wherefore, the decree, so far as it makes the injunction perpetual in favor of Craddock as to both judgments, and so far as it makes it perpetual in favor of Young against the debt of V. Yates, is affirmed, but so far as it perpetuates the injunction in favor of Young against their judgment on the note of T. M. Yates, and so far as it enjoins proceedings against V. Yates on the same note, is reversed, and the cause is remanded with directions to refer the case to a commissioner for a settlement of the accounts according to the principles of this opinion, with power to hear further evidence on the points involved—and that a decree may be rendered dissolving the injunction as to Young, so far as he shall appear to be liable according to the principles of this opinion, and perpetuating the injunction as to the residue of the judgment as against Young. Valentine Yates is entitled to relief on his cross bill only so far as the note of T. M. Yates is entitled to credits under this opinion.

*J. & W. L. Harlan* for appellant; *Wintersmith* for appellee.