Judge Graham
delivered the opinion of the Court.
Joseph J. Courier was the statutory guardian of the complainants, and as ' such had in his hands, :$> . He was also largely indebted to other persons. John Collier was his surety in his guardian bond. On the-ith Oct. 1841, said Joseph J. Collier made his mortgage to various creditors and sureties, of all his estate. After setting forth the estate conveyed, and the several debts and liabilities intended to be secured, the deed provides that if said Collier “ shall pay off and discharge the above named debts and liabilities, and save the said persons from all loss or damage, the above obligation shall be void, or else remain in full force; but if the said Joseph J. Collier shall fail to pay off said *333 debts and liabilities, the mortgage shall be in full force as follows, the said debts shall be paid off and discharged out of the proceeds of the mortgaged property, the first debts named to be first paid, according to the above list, the whole debt when any one of the mortgagees are . security, to be paid” The mortgagees stand in the following order, viz: Elizabeth Collier, Robert Collier, John Collier, John Williams, ad’mr., &c., Abraham Moore, John M. Talbott, A. Shackelford, W. McKim, Lee Whaley, T. Watson, &c., and Milton Jameson. In describing the debts, those due to Elizabeth Collier are' first named, then the debt to Williams, and thirdly the debt to Robinson’s children, (the complainants,) and for which John Collier is bound as surety. On the 25th of March, 1842, said Collier made another mortgage conveying the land and some other property contained in the first mortgage. This second deed is made to his-said wards, and to McLane, Moore, Miller, and McKim, to secure to them the same debts mentioned as due on the first mortgage. It seems that some time during the year 1842, the mortgagor, and the greater portion of the mortgagees, agreed to dispense with a formal foreclosure of the mortgage, by a suit in equity, and-undertook to pay off the debts, by dividing the property among themselves. To this arrangement, WarfiekL one of the mortgagees, refused his assent. John Collier in his answer denies that hegave his consent. The proof is very clear that he was present at the time the distribution took place, and although there is some conflict in the evidence, we are satisfied from the whole proof that he fully assented to the arrangement, except 1 hat the proof is not sufficient as against his positive denial to establish the fact that he signed his name to the writing which was then entered into by the parties, and which has since been lost. The present complainants were not present or consulted. They then were, and yet are infants, and bring this suit by their next friend. Nor was Elizabeth Collier present- — on the contrary, there is proof that a Mrs. Collier, (whom wc sup *334 pose to bo said Elizabeth,) was then dead. In making this distribution of the real and personal óslale no part of it, then in possession of Joseph J. Collier, was set apart to pay the debt due from him as guardian, but it was agreed by those present, that it “.should be paid out of some negroes which belonged to said Joseph on. the death of his mother, his undivided interest'i-n which is included in the mortgage. It is also stated in proof, that the slaves alluded to, did subsequently come to the possession of said Joseph, were immediately run off and no part of them was applied to 'the payment of that debt. Joseph J. Collier, has since left this Commonwealth, and he and his surety John Collier, are insolvent. Such are substantially the facts of this case, so far as it is at present necessary to recite them. In this state of case, Mary, Jane, and Ann Robinson, the wards of said Joseph have instituted this suit in Chancery, in which they claim that the mortgage was made for their benefit., ancl ask the Chancellor to subject the mortgaged estate to the satisfaction of their demand, or to compel the mortgagees who have received the property to pay it. The Court below refused to'do this, but gave a decree against their guardian, and dismissed their hill as to the other defendants. It may be remarked here, that, neither said Elizabeth Collier, or (if dead as supposed,) her representatives have been made parties by process or otherwise. If however, the complainants are-not entitled to any decree other than that obtained by them, it would not be proper to'reverse the case for want of proper parties to- the suit, when the same decree would he rendered, after such parties should be made. It is therefore necessary to inquire whether they occupy such a position to the mortgage as will entitle them to a satisfaction óf their demand, notwithstanding the presence and assumed assent of John Collier the nominal mortgagee, to the before mentioned arrangement.
Where a morli?a«e is made lo u guardián to secum money duo to his wards, the wards are necessary parties to a suit brought by a joint mortgagee for a foreclosure; (Í B. Monroe, M3; 7 lb., 30ij 10 lb., 200.)
*334 In the case of Bronson vs Robinson, (4 B. Monroe, 143,) this Court held that where a mortgage had been made to a surety to secure the payment of a debt to *335 his principal, the creditor though not a nominal mortgagee is entitled to the benefit of the mortgage, and may enforce it in equity; and cannot while he retains this right, be regarded as a general creditor or a stranger to the mortgage, for he has a lion in equity for his security; and although not the mortgagee^ his debt is in truth the mortgage debt. The sainé principle is recognized in Moore vs Moberly, (7 B. Monroe, 301,) and in Willis vs Caldwell, (10 B. Monroe, 200.) The very terms of the deeds under which the several mortgagees claimed, not only notified them that the sum due to these wards of Collier was intended to be secured by the mortgage but that it was in fact one of the debts first to be paid. The debts to Elizabeth Collier was among the largest in the mortgage, and she stands first in the list of creditors. She was not present, nor was any provision made for her, unless it can be supposed that the following words written in the list produced byJosephJ. Collier as showing the distribution made by the creditors, can be regarded'as such provision: •
“Geo. Robinson’s children, $800.
“ Elizabeth Collier debt suit, $2421 50.
“ Interest in estate of grandfather and father’s estate valued at $2000, and household and kitchen furniture, exempt from execution, $150,”
So far from such an arrangement as is contained in the foregoing extract, indicating a desire and intention in good faith to secure these absent creditors, it cannot but be looked upon as an arrangement to pay themselves out of the valuable and available estate, and to leave the absent and unprotected widow and children to the delusive hope of receiving something from other sources. But ii tills was done in good faith, it turns out ihul the wards have received nothing, the slaves after-wards received by Collier, having been immediately transported to some distant State. No formal and binding release is proved to have ever been executed by John Collier, even if such act of his, under the circum *336 stances developed in this cause, could have been permitted to preclude the plaintiff in error from all claim to the mortgaged estate. . In the absence of such release, and in view of all .the facts of this case, it seems' ■to us that the wards are entitled to relief, and that the Court should not have merely rendered a decree against the insolvent guardian, but should have in some manner made the mortgaged estate available to satisfy their claim. .It seems that all the mortgaged property has been disposed of, no p art of it remaining in a condition to be subjected to the decree. ■
"Whore part of several mortgagees have taken into possession and appropriated to their own use all the mortgag’d property, they should beheld to account íateabíy to the other joint mortgagees: (8 B. Mon., 313)
A mortgagor may pxefer one creditor, or designate the order which the mortgage debts shall be paid.
In such case the decree proper to be rendered is clearly suggested in Dickey vs Thompson, (8 B. Monroe, 313.) The several parties who have received the property, should be compelled to bear, rateably, ■ the common burden. Their several portions to be ascertained by the value of property received by each, and inasmuch from the nature of some of the property, it may long since have perished, and it would be difficult, if not impracticable, to ascertain its actual worth at the time of distribution, and as it may be presumed that whether the valuation then fixed upon it was high or low, it was as to the parties receiving it, set apart by the same scale of value, no injustice can be done to them, by requiring them to account for it according to the value fixed upon it by themselves. But before any further decree shall be rendered, the Court should cause all the mortgagees or their representatives, to lie brought before the Court as parties to the suit, so that as far as may be possible, the Court may on due enqui ■ ry into all the facts, render justice to each.
r The mortgage provides that the debts first named in the list, shall be first paid, and the whole debt when any one of the mortgagees are security, to be paid. The parties anticipated that there was not property enough to pay them all in full, and the grantor designed to give a preference to some of them, and particularly to his securities. The Court should ascertain how much was actually due to each mortgagee at the time of the dis *337 tribution of the property, how much each one received at that distribution, and to what debts the property was applied. So far as security debts were paid, that payment should not be disturbed unless it be necessary in order to do justice to the complainants and other preferred creditors; that is, those persons who received property in discharge in whole or in part of debts, not security debts, should first contribute to the complainants, according to the amounts received on such debts, and if there be then any deficit, the securities whose debts are in the deed postponed to that of the Robinson’s and who have been paid in whole or in part, must contribute pro rata.
Thornton for plaintiff; Hawes for defendant.
The decree is reversed, and the cause remanded to the Circuit Court with directions to set aside the decree, and for other proceedings not inconsistent with this opinion.