## Cargile v. Briscoe.

(Decided October 14, 1924.)

### Appeal from Union Circuit Court.

Subrogation—Surety on First of Series of Notes Held Not Entitled on Payment to Subrogation as Against Vendor.—Surety on first of series of notes for purchase price of land, secured by lien on

the land, who paid note, was not entitled to be subrogated to rights of vendor, except to extent that lien on land was not exhausted by payment of all of purchase money, with interest; right to subrogation being postponed until vendor had been fully satisfied.

G. L. DRURY and TRUMAN DRURY for appellant.

DAVIS & JONES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

Appellee, Briscoe, sold to H. S. Cargile a tract of land for more than $24,000.00 in November, 1919, the purchase price being evidenced by seven (7) notes signed by Cargile and payable at intervals thereafter, each note secured by lien upon the lands. As there was no cash paid the first note was due and payable on March 21, 1920, and was for the sum of $10,000.00, with interest at six per cent from January 1st until paid. It recited: "This note is one of a series of notes this day given for land conveyed and secured by a lien thereon." It was not only signed by H. S. Cargile, the purchaser, but his mother, Mrs. Mary S. Cargile, became surety on this note and attached her signature to it. She did not sign any of the other notes as surety or otherwise. The deed recites:

"This indenture made and entered into this November 26, 1919, by and between A. Henry Briscoe, unmarried, C. A. Briscoe and his wife, Laura Briscoe, of Morganfield, Kentucky, parties of first part, and H. S. Cargile of Morganfield, Ky., party of second part, witnesseth:

"That H. S. Cargile has this day executed to A. Henry Briscoe seven promissory notes, the first being for ten thousand dollars, due on or before March 1, 1920, second for two thousand and five hundred dollars, due on or before January 1, 1921, the third for two thousand five hundred, due on or before January 1, 1922, the fourth for two thousand five hundred dollars, due on or before January 1, 1923, etc. . . . All notes bear interest from January 1, 1920, at rate of 6%. This interest is payable annually and if not so paid when due to draw interest as principal and at same rate, and a failure to pay this interest when due will mature all notes at option of holder of any of them, and the notes herein are

secured by lien on property hereinafter conveyed, and first note of ten thousand dollars is also secured by personal endorsement of Mrs. Mary S. Cargile. In consideration of above paper parties of first part have bargained and sold and do hereby sell and convey unto party of second part his heirs and assigns forever the following described property in Union county, Ky. . . . . ''

The grantee was placed in possession of the land, but the $10,000.00 note was not fully paid until after the commencement of this action and then not by the mortgagee but by the surety, Mrs. Mary S. Cargile. In answer to the allegations of the petition Mrs. Cargile averred:

"That it is true that the plaintiff sold to H. S. Cargile the 99½ acres described in suit No. 1259 at and for sum of $24,875.00, no part of which was paid in cash, and that notes as described in said petitions No. 1258 and No. 1259 were taken in payment therefor and that this defendant, Mary S. Cargile, became surety upon the $10,000.00 note and has paid thereon 8,105.00 on March 3rd, 1920, leaving a balance thereon of $2,000.00, upon which she paid $1,500.00 on February 20, 1921, but which sum the plaintiff without her knowledge or consent credited upon the note for $2,500.00, due January 1, 1921, and which was not even her note.

"This defendant admits she owes $10,000.00 note subject to credits for $8,105.00 paid March 3, 1920, and $1,500.00 paid February 20, 1921, and for that sum she now offers to confess judgment as surety and to only be liable after exhausting H. S. Cargile's estate.

"The defendant further says that all notes given for purchase price of this land were of equal rank and dignity and that she has leins for sums paid by her and yet to be paid by her upon said premises of equal rank and dignity with lien of plaintiff for notes for $14,875.00 held by plaintiff.

"This defendant further says that it is true that H. S. Cargile is indebted to her in sum of $19,200.00 with interest from March 3, 1920, which sum is secured by lien on this same land, but that lien of this $19,200.00 is second subsequent and inferior to liens held by plaintiff and this defendant to secure to them the payment of purchase price of 99½ acres, to-wit,

the $24,875.00 and described herein. This defendant says that the plaintiff has never assigned to her the note upon which she has made payment as aforesaid, and she asks that he be required to do so before he be permitted to take judgment against her for balance admitted as due him thereon.''

A general demurrer was sustained to the answer of Mrs. Cargile, as amended, seeking to be adjudged a lien of equal rank and dignity with the lien of plaintiff, for $10,000.00 and interest paid by her as surety of H. S. Cargile.   Pursuant to this order the trial court adjudged appellee Briscoe a lien upon the entire property described in the petition for the payment of his purchase money debt, and further adjudged his lien prior and superior to that of Mary S. Cargile, and that she was not entitled to be subrogated to the rights of a lien creditor upon the $10,000.00 note which she had paid until Briscoe's entire debt was satisfied.   From this judgment she appeals.

The grantee promised to pay something more than $24,000.00 for the farm and the grantor retained a lien upon the land for all the purchase money.   Mrs. Cargile became surety on the $10,000.00 note which first became due.   To the extent of the $10,000.00 Briscoe had not only a lien upon the lands to secure his debt but upon the personal surety of Mrs. Cargile.   The fact she signed the note is evidence enough that it was the purpose of the parties to strengthen the paper which was before secured by lien on the land.   It certainly was not intended to diminsh the security or to take away any of that which the grantor retained when he conveyed the land.   All the notes were of equal dignity, including the one for $10,000.00.   The lien retained to secure them was of equal dignity and effect.   From this it follows, it seems to us, that Briscoe was entitled to first have his entire debt paid by enforcement of the lien on the land and by action against the surety before the surety could appropriate any part of the security afforded by the lien to the vendor; and the mere fact she paid off the $10,-000.00 note secured by lien did not entitle her to be subrogated to the rights of the vendor except to the extent that the lien on the land was not exhausted by the payment of the vendor's purchase money with interest.

The principal is well expressed in 25 R. C. L., 1350, where it is said:

"Real estate is primarily liable for the indemnity and protection of sureties for the purchase

price. Hence it is a general rule in nearly all juris-
dictions recognizing any right of subrogation to a
vendor's lien, that a surety for the payment by the
vendee of the purchase price of land or a portion
thereof, if compelled to pay the purchase price under
his contract of suretyship, is to the amount so paid
by him entitled to be subrogated to the lien of the
vendor, provided, of course, this right of subroga-
tion does not prejudice the vendor or other sureties.
So the surety on or indorser of notes given for the
purchase price of land will be subrogated to a ven-
dor's lien if required to pay the notes, provided all
the notes given for the purchase price are paid.''

The same text of page 1381, further pursuing the
subject, says:

''The surety's right of subrogation to securities
held by the creditor is subordinate, and not superior,
to the rights of the latter. His right is to be put in
the same position as the creditor, not in a better one.
He cannot have the benefit of the security without
assuming the burden to which it is subject, without
discharging the indebtedness for the payment of
which it is held. His right rests, not upon contract,
but upon principles of natural justice. It would be
unjust to permit him, on payment of part of a debt,
or one of several debts, to appropriate to the satis-
faction of such debt, or one of several debts, a
security which the creditor holds for the satisfaction
of the entire indebtedness. It would be putting
him, not in the same position as the creditor, but in
a better one. It would tend to defeat the object and
end of suretyship and might, in some cases, place the
creditor in a worse position than he would occupy
without a surety.'' See also 37 Cyc., et seq.

While Mrs. Cargile was entitled to be subrogated to
the rights of the vendor after the payment of the $10,-
000.00 note, equity would not allow her to take from the
vendor any part of the security held by him before she
became surety on the note and which he would have had
but for her signing one of the notes as surety. If the
land was not exhausted in payment of the vendor's lien
whatever remained was subject to the debt of Mrs. Car-
gile, who as surety paid the $10,000.00 note. Her rights
under the lien obtained by subrogation were postponed
until the vendor had been fully satisfied for the purchase

price and interest.  This rule does not militate against that laid down in Dean v. Reed, 204 Ky. 275, holding that where two notes for land and the lien securing them were indorsed and transferred to plaintiff before maturity, and the seller was absolved from liability as indorser on the first note, under Kentucky Statutes, section 3720b-70, by plaintiff's failure to present it for payment when due, but plaintiff presented the second note when due, the seller, upon payment of a judgment on the second note, would be subrogated to the rights of plaintiff in the lien.

In this case the surety has no lien except upon the ground of equitable subrogation, and the settled rule is that no subrogation exists in favor of the surety to the prejudice of the creditor. 25 R. C. L. 1349.  In 21 R. C. L. 1112, the rule stated:

> "Likewise a surety for the purchase money of real estate, who is compelled to pay the same has a right by subrogation to the vendor's lien held by the person to whom the purchase money was paid.  However, a surety on a note given for the purchase money of land cannot enforce the vendor's lien in his favor or maintain a bill in equity to indemnify himself by a sale of the land until he has first paid the note."

The surety must first pay the note in full to the creditor before he has any right of subrogation, and so necessarily he had no rights to the prejudice of the creditor.  Dean v. Reed presented a different question.  In that case Dean held two notes which had been assigned to him by Reed.  He had lost his recourse on Reed as to the first note by failing to give notice of dishonor.  Each note was secured by an equal lien on the land.  When Reed lost his recourse on the first note he could not apply more than half the proceeds of the land to the first note, for this would be to prejudice the rights of Reed as the endorser of the second note.  The statute released Reed from all liability on the first note, and to allow Dean to apply on the first note money which otherwise would have been applied on both notes would have been to this extent to increase the liability of Reed on the second note.  To illustrate, if the two notes had been taken in the first place to A and B and A had assigned his note to C and B had assigned his note to D, then each of the notes would be alike secured by a lien on the land.

If C had lost his recourse on A by failing to give notice of dishonor he could not have applied more than one-half the proceeds of the land to his note to the prejudice of D and B. The fact that the notes were both in the hands of one person does not affect the result. The statute released the endorser of the first note, and, although he remained liable on the second note, no greater liability could be imposed on him by reason of the negligence of the holder as to the first note. This is the necessary effect of the statute releasing him from liability on the first note.

Each note being secured by an equal lien on the land, if Reed had not been released on the first note, he would have been entitled to have the land money applied equally on both notes when he paid them, that is, one-half thereof on each note. When he was released on the first note, he had the same rights as to the second note as he had before. To allow Dean then to apply all the proceeds of the land to the first note would be in effect to make Reed pay that note to the extent of half the proceeds of the land. This the statute forbids.

In this case the purpose in requiring security on one of the notes was to protect the vendor. To adjudge the surety a lien against the vendor would be to deny the vendor the benefit of requiring a surety on the note. In that case to allow Dean to apply all the proceeds of the sale on the first note would be to make Reed pay part of that note, although released from liability on it.

The chancellor having arrived at this conclusion his judgment is affirmed.

Judgment affirmed.

Whole court sitting.