## Hargis Bank & Trust Company v. Gambill et al.

(Decided May 27, 1930.)

TURNER & CREAL, HENRY L. SPENCER and A. F. BYRD for appellant.

GRANNIS BACH, E. C. HYDEN and FRANK GINOCHIO for appellees.

|Opinion of the Court by Judge Willis—Affirming.

The problem presented is to determine the principle that governs the application by the court of the proceeds of mortgaged property sold under a decree to the several debts secured by the mortgage. A statement of the ultimate facts showing how the problem arose will aid in its solution. G. W. Gambill was indebted to the Hargis Bank & Trust Company on several notes aggregating $17,600. One of the notes · for $8,000 was unsecured, another for $7,000 was indorsed by the debtor's father, and a third for $2,600 was indorsed by the debtor's brother. The debtor applied to the bank for an additional loan of $4,000, which was granted, and to secure which a mortgage was given on the mineral property and mining plant of the principal debtor. The mortgage contained this provision:

> "This mortgage shall also secure any additional sums of money advanced or loaned by second party to first parties, or either of them, jointly or severally, before or after this date, by notes, accounts or obligations of any kind whatever, at any time, not to exceed in the aggregate the sum of $25,000.00."

At the time the mortgage was given it was thought that the property would realize on a sale a sum sufficient to discharge all the debts. It was sold, however, under a decree obtained by the bank, and brought only $10,000. The circuit court applied the proceeds of the sale, less costs, to the payment in full of the $4,000 debt, and apportioned the balance pro rata upon the three debts existing when the mortgage was executed. The bank appeals, contending that the balance should be applied to the unsecured debt of $8,000 and no part of it used for the benefit of the two notes that had indorsers. The appellees seek to sustain the judgment upon two grounds. It is first insisted that the terms of the mortgage extended its security equally to all of the pre-existing debts of

G. W. Gambill. It is next claimed that there was an express agreement with the bank for the benefit of the indorsers, to the effect that the proceeds of the security should be for the equal protection of the bank and the indorsers. Several subordinate questions respecting the existence of the agreement and the authority of the president of the bank to bind it are argued, but our conclusion derived from the terms of the mortgage itself renders unnecessary any discussion of the subsidiary subjects. It will be observed that the mortgage was designed primarily to secure the $4,000 loan made at the time it was taken. But it expressly embraced, within a fixed limit, all pre-existing obligations of the debtor to the bank. The three debts involved were within the limit fixed, so that the sole question presented is the proper apportionment of the proceeds of the sale among the several debts, when it is insufficient to pay them in full. The authorities upon the subject are not in entire agreement. Many courts have adopted the pro rata rule of appropriation equally and ratably among all the debts secured by the instrument. 42 C. J., sec. 2012, p. 310; 19 R. C. L., sec. 474, p. 658. Another rule awards priority according to maturity of the notes secured (19 R. C. L., sec. 475, p. 660), and still another allows precedence in the order of the several assignments when the notes are held by different parties (19 R. C. L., sec. 476, p. 660). The weight of authority, however, is to the effect that several debts or claims equally secured by the same mortgage are entitled to share ratably in the proceeds of its foreclosure, whether held by the same mortgagee or by different owners, unless there are countervailing equities affecting the various holders. 42 C. J., p. 310, sec. 2012; 19 R. C. L. p. 656, et seq., secs. 473-476; Orleans County National Bank v. Moore, 112 N. Y. 543, 20 N. E. 357, 3 L. R. A. 302, 8 Am. St. Rep. 775; Rogers v. Moore (C. C. A.) 85 F. 920; Bridenbecker v. Lowell, 32 Barb. (N. Y.) 9; Chatten v. Knoxville Trust Co., 154 Tenn. 345, 289 S. W. 536, 50 A. L. R. 537, Anno. page 546. In the early case of Willis v. Caldwell, 10 B. Mon. 199, decided in 1849, this court said:

"The mortgage executed by John J. Caldwell to Willis and Cole, expressly conveys the land, negro, and personal property, to the grantees to secure the payment of the sums of money mentioned in the mortgage, 'and to indemnify and keep secure his

securities in the several cases wherein he has given security.' William Caldwell, the complainant, was surety in two of the notes mentioned, and Ewing was surety in another. The sureties, by the terms of the mortgage, had an equitable interest in all the property mentioned in the mortgage; they are in fact virtually mortgagees, though not named as such in the deed. Willis and Cole received the conveyance, not only as a security for the debts due to them, but for the additional purpose of saving the sureties as far as possible from injury. There is no preference of debts, no priority or precedence given to one debt over another. The property was equally bound for the whole, and if insufficient to pay the whole, then so far as its value extends, it should be appropriated to each debt in proportion to its amount to the whole. The mortgagees should, as to the sureties, be regarded as trustees, holding the title for the mutual benefit of themselves and the sureties. It would be manifestly unjust, first to take a conveyance of all their debtor's property, thereby preventing the sureties from subjecting it to their demands, if they should pay the debt, or at least only subjecting it subject to the mortgage, and then, after thus taking the property in their own hands, to appropriate the whole of it to the payment of their other demands, to the exclusion of those for which they have personal security. Basing a decree on the principle of apportioning the property to the debts, there is no difficulty in rendering a decree." See, also, Olds Wagon Works v. Bank of Louisville, 10 Ky. Law Rep. 235.

In Moore v. Moberly, 7 B. Mon. 299, the pro rata principle for the payment of the several debts secured was recognized and enforced. In Helm v. Young, 9 B. Mon. 394, it was held that all debts secured by a mortgage were entitled to a ratable payment of the proceeds. Cf. Robinson v. Collier, 11 B. Mon. 332, 52 Am. Dec. 572. In M. Rumley Co. v. Wilcher, 66 S. W. 7, 23 Ky. Law Rep. 1745, the situtaion was somewhat variant, but the principle was observed. The general rule respecting the application of payments is to the effect that the debtor may direct application when the payment is voluntarily made; and that, in the absence of such direction, the creditor may make his own application. McDaniel v. Barnes, etc.,

5 Bush 183. But that principle has no pertinency where the payments are not voluntarily made, but arise from a coercive sale of mortgaged property. 42 C. J., sec. 2018, p. 314; 19 R. C. L., sec. 473, p. 457. In foreclosure proceedings the law makes the application and exercises the authority in a manner that will protect the several equities that may be involved. Fielder v. Varner, 45 Ala. 429; Orleans County National Bank v. Moore, supra.

In McClanahan, Field & Co. v. Chambers, 1 T. B. Mon. 43, it was held that the proceeds of an estate conveyed in trust to secure the payment of several notes, some of which are afterwards assigned, are to be divided between the parties in proportion to the amount of the notes. In Campbell v. Johnston, 4 Dana 177, it was held that, when a trust estate is sold under a decree for the payment of debts, and the mortgagor has a right of set-off against the notes secured by the mortgage, which notes are in the hands of different assignees, the set-off must diminish the debt due each assignee ratably, and, when one of them has extinguished the set-off, and the estate is not sufficient to pay all the notes, the proceeds should be so distributed as to make all holders of the notes contribute ratably to the set-off, and receive ratable shares of the surplus. It will be seen, therefore, that this court is committed to the majority doctrine of the pro rata application of proceeds, irrespectve of maturity or order of assignment, when the instrument was given to secure all the debts. But it is insisted that in recent years the court has departed from the rule thus early established, and adopted a contrary rule, to the effect that the primary mortgagee must first be paid in full before any benefit could accrue to sureties or indorsers. The cases of Dean v. Reed, 204 Ky. 275, 263 S. W. 714, 715, and Cargile v. Briscoe, 205 Ky. 394, 265 S. W. 929, are relied upon to sustain the argument of the appellants. In Dean v. Reed it appeared that Reed had sold to one Dean a tract of land retaining a lien for a deferred payment evidenced by two notes. Reed assigned the notes to a holder in due course, but was released as an indorser of one of the notes by failure of the holder to present it for payment at the bank where it was payable and to have it protested as required by statute. But his liability as indorser on the second note was not discharged. The court simply held that the holder of the notes was entitled to collect both from the proceeds of

the land, or to collect one from the proceeds of the land and the other from the indorser. It said:

> "It appears to us that the lower court correctly ruled that, when Reed pays off the second note, the one on which he is liable as indorser, he becomes the owner thereof and entitled to participate in the proceeds of the sale of land which was in lien for the security of both notes, the two being of equal dignity."

Nothing in that case affects the rule of equity which prevails in the circumstances involved in the present case. In Cargile v. Briscoe, 205 Ky. 394, 265 S. W. 929, Briscoe had sold to Cargile a tract of land and received no part of the purchase price in cash, but accepted seven notes payable at intervals thereafter and secured by a lien upon the land. Since there was no cash consideration, the vendor stipulated that $10,000 of the consideration should be guaranteed by Mary S. Cargile. The effect of the transaction was to give Briscoe a lien upon the land for the full consideration, and, in addition thereto, he had the personal indorsement of Mary S. Cargile for the amount mentioned. It was held that Briscoe was entitled to be paid in full before the surety of the vendee could acquire any rights against the property acquired by the vendee. The case is manifestly different from the present one, and does not involve the principles or discuss the cases to which we have adverted. The rights of the surety against the vendee for whom he became surety could not arise until the vendor whom he was securing had been paid. The arguments advanced and the authorities adduced respecting the origin and application of the doctrine of subrogation are not appropriate in this instance, or applicable to the present case. The rights of the appellees do not depend upon that doctrine, but are derived directly from the mortgage, which secured the debts upon which they were indorsers. Though not nominal mortgagees, they were beneficiaries of the mortgage because the debts secured were the ones which concerned them, and the mortgage conferred rights upon them. Bronston v. Robinson, 4 B. Mon. 143; Moore v. Moberly, 7 B. Mon. 301; Willis v. Caldwell, 10 B. Mon. 200; Robinson v. Collier, 11 B. Mon. 332, 52 Am. Dec. 572. They had a right to have the proceeds of the mortgaged property applied equally to all the debts it secured.

It is thus apparent that the circuit court ruled rightly in requiring the proceeds of the mortgaged property to be distributed ratably among the debts it was given to secure.

The judgment is affirmed.