# Cundiff & McDowell v. Roy C. Whayne Supply Co.

(Decided Feb. 25, 1936.)

LAWRENCE S. HAIL and WESLEY & SON for appellants.

WILLIAM F. CLARK, Jr., and BEN V. SMITH & SON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellants, L. B. Cundiff and Eugene Mc-Dowell, partners doing business under the firm name of Cundiff & McDowell, entered into a contract with the state highway commission for the construction of a section of road in Russell county approximately three miles in length. The contract called for the completion of the work within 90 days after the contractors received notice from the state highway commission to begin work. This notice was received on July 4, 1932. Appellants had no equipment with which to do the work, and on June 16, 1932, they purchased under a conditional sales contract from the Roy C. Whayne Supply Company of Louisville, Ky., a caterpillar tractor, and leased from it four Euclid tractor scrapers and one Killifer road ripper. They agreed to pay $2,400 for the tractor. They agreed to pay $800 in cash, and executed two notes for $800 each, due August 20, 1932, and September 20, 1932, respectively. The lease contract provided that rentals for the leased equipment should begin on the day it was shipped from Louisville, and end when it was returned to the owner, except that rent should be paid for a minimum period of 2 months. The equipment was shipped to appellants June 24, 1932, and the four scrapers were returned by them within the 2-month period, and the ripper was returned October 5, 1932. On May 29, 1933, the Roy C. Whayne Supply Company brought this action against the firm of Cundiff & McDowell to recover the sum of $666.23, alleged to be the balance due on the contract. It alleged that the defendants were indebted to it in the sum of

$3,516.23, subject to credits totaling $2,850, paid as follows: $400, July 16, 1932; $850, July 29, 1932; $1,350, September 26, 1932; and $250, January 14, 1933. The indebtedness of $3,516.23 was composed of the following items: Purchase price of caterpillar tractor, $2,400; rental of equipment, $1,056.67; interest, $41; repairs to tractor, $18.35; and postage on tools, 21 cents.

The defendants filed an answer and counterclaim in which they denied that they were indebted to the plaintiff in any sum, and alleged that the plaintiff warranted the leased equipment to be in good condition and fitted to do the work for which it was rented, that the equipment was out of repair and unfit for the purpose for which it was rented, and that, by reason of the plaintiff's breach of its warranty, the defendants were put to extra expense in completing the work and had been greatly damaged. On their counterclaim, they asked for a judgment against the plaintiff in the sum of $860. They also alleged in their answer that the plaintiff wrongfully applied the payments made to it on the open account instead of on the notes executed for the purchase price of the caterpillar tractor, and denied that the plaintiff was the owner of the tractor and entitled to take possession thereof. Subsequent pleadings completed the issues, and, the case having been submitted upon the pleadings and the proof, the circuit court entered judgment for the plaintiff for the amount sued for, and ordered the caterpillar tractor sold and the proceeds applied to the satisfaction of the debt.

The question presented by this appeal is solely one of fact. It is first claimed that appellants should not be charged with rent for the road ripper from June 24, 1932, as it was out of repair when received and could not be used until July 11, 1932. Under the contract, the rent began on June 24, the day the equipment was shipped, but the appellants did not receive notice from the state highway commission to begin work until July 4, 1932. The evidence shows that it was raining on that day, and that it continued to rain during the week, and it was impracticable to use the machinery during the first week on account of the wet condition of the ground. Oscar Crady, a mechanic employed by appellee, was sent to Russell county on July 3, 1932, to instruct appellants in the use of the machinery and to see that it was in proper condition to be used. He remained 3 or 4 days, and did repair work on the machin-

ery, but principally on the tractor which appellants had purchased. He testified that, due to the rainy weather, it was impossible to do much work with the machinery while he was there, but that it was in good condition when he left.

Appellants' chief complaint concerns the condition of the road ripper, which they claim should have been equipped with five plows, or standards, but in fact was only equipped with four. The road ripper is so constructed that five standards, or plows, can be attached to it, stationed about one foot apart. The plows are bolted to a crossbar. The road ripper in question was equipped with only four plows, two at each end of the crossbar. The appellants claim that the ripper, when in use, would leave two feet of earth in the middle untouched, and that it was necessary to run it over the ground twice, which doubled the expense of its operation. The testimony for the appellees tended to show that, while the road ripper was so constructed that five plows, or teeth, could be attached to the crossbar, it was customary to use only three, and that five are never used except where the ground is dry and not hard. If the ground is either hard or wet, the machine operates more efficiently if equipped with three teeth or, at the most, four. Appellants also claim that the scrapers were expensive to operate and practically worthless, because the sprocket chains broke frequently, causing loss of time. The proof was, however, that this is not unusual where scrapers are employed in heavy work, such as the ones in question were subjected to, and that a broken chain can be quickly and easily repaired.

Eugene McDowell testified that he notified appellee, principally through its employees, Oscar Crady and H. E. Pershing, a salesman, that the equipment was not satisfactory and needed repairs. All of appellee's officers and employees, including Crady and Pershing, denied that appellants at any time during the construction work made any complaints concerning the condition of the leased equipment. A number of letters written by appellants to appellee while the work was in progress were introduced, but in none of them did appellants complain of the condition of the equipment. Most of them were in regard to checks which appellants had sent to appellee, and which had been returned with the notation thereon, "insufficient funds."

Some point is made of the fact that appellants were compelled to employ teams to complete the work within the time specified in their contract with the state highway commission. The proof showed, however, that much of the ground to be graded was low and swampy, and that the heavy equipment could not be used.

We think the evidence as a whole sustains the chancellor's judgment. There is no merit in appellant's contention that the appellee wrongfully applied the payments to the open account instead of crediting the notes which had been executed for the purchase price of the caterpillar tractor. They admit that they did not at any time give any instructions as to the application of the several payments. Under these circumstances, the creditor can apply the payments as he sees fit. Hargis Bank & Trust Co. v. Gambill, 234 Ky. 538, 28 S. W. (2d) 769; Anspacher v. Utterback's Adm'r, 252 Ky. 666, 68 S. W. (2d) 15.

The judgment is affirmed.