[Civ. No. 37209. Second Dist., Div. Two. Mar. 19, 1971.]

BRUNSWICK CORPORATION, Plaintiff and Respondent, v.
R. MILLER HAYS, Defendant and Appellant.

136

COUNSEL

Jack Dunaway for Defendant and Appellant.

Von Herzen, Catlin & Reinjohn and Richard G. Reinjohn for Plaintiff and Respondent.

OPINION

COMPTON, J.—Defendant Hays appeals from a judgment rendered against him and in favor of plaintiff Brunswick Corporation on a contract of guaranty.

The amount of the judgment which is $90,056 represents the difference between the amount obtained as a result of a resale of bowling equipment after repossession under a conditional sales contract and the amount due and owing on the note secured by said conditional sales contract. Defendant was an individual guarantor of the note.

The single issue on appeal is the interpretation and effect of a limitation clause in the contract of guaranty. That limitation reads as follows:

"Notwithstanding any other provisions, the total amount of Guarantor's obligation hereunder shall be limited to the first four years' payments on the order contract totaling $118,528.16."

The facts are not in dispute. In 1965, Cochise Bowl, Inc., an Arizona corporation, purchased from Brunswick Corporation 16 bowling lanes and related equipment including automatic pinsetters, all at the purchase price of $239,056. The terms of said purchase were $2,000 down payment with the balance represented by a promissory note and conditional sales contract. Said note and contract called for 96 monthly installment payments of $2,469 each, together with 6 percent interest per annum.

As additional security plaintiff requested and defendant executed the individual written guaranty which is at issue here.

The note and conditional sales contract were executed on February 26, 1965, the guaranty on April 29, 1965. Payments on the note were actually to have commenced on December 10, 1964. The guaranty recited that the consideration therefor was the extension of credit to Cochise Bowl, Inc. Cochise Bowl, Inc. failed to make any of the monthly payments whereupon Brunswick accelerated the total amount of the note and repossessed the equipment. The repossession occurred on October 29, 1965. A resale of the equipment on April 7, 1966, brought $147,000 at a private sale. On

this appeal defendant does not attack the regularity of the sale, nor the trial court's finding that there was sufficient consideration for the guaranty.

After a demand on defendant Hays to pay the deficiency of $90,056 and his refusal to do so, Brunswick instituted this action.

The trial court found as a fact that "The parties to said Guaranty intended that only the first four years' payments on the order contract totaling $118,528.16 would discharge the guarantors' obligation." The court made a further factual finding that "The credit given defendant, COCHISE BOWL, INC., on the resale of said equipment . . . did not constitute payments so as to discharge [the] obligation under the terms of the Guaranty contract."

These findings were embodied in a conclusion of law by the trial court as follows:

"The application of the moneys received from the foreclosure and resale of the equipment was not payment as contemplated by the terms of the Guaranty contract so as to discharge said contract."

■ The trial court's findings and conclusions were based on its interpretation of the language of the document which was purely a question of law. Thus, we are free to make an independent determination of the intent of the parties.

■ Defendant contends for an interpretation that his obligation which became fixed and enforceable upon the default of Cochise Bowl, Inc. was for one-half of the purchase price and that the words in the limitation paragraph "the first four years' payments on the order contract" are merely descriptive and not limiting.

Accepting that interpretation, as we do, i.e., that defendant's guaranty was limited by the dollar amount of one-half the principal sum, does not answer the question of which half of that sum he guaranteed or to what extent his obligation is discharged by the fact that Brunswick was able to obtain satisfaction in excess of that amount by resort to other security.

■ In California, since 1939 and the enactment of Civil Code section 2787, contracts of guaranty have been treated as suretyship obligations. Thus, the obligation of a guarantor as a surety is identical to that of the principal debtor. (*Wiener* v. *Van Winkle,* 273 Cal.App.2d 774 [78 Cal. Rptr. 761].)

The obligation of a surety cannot be more burdensome than that of the principal debtor and he is exonerated by the *performance* of the principal obligation. (Civ. Code, §§ 2809, 2839.)

In the case at bar the deficiency judgment is not more onerous than the principal obligation of Cochise Bowl, Inc. The conditional sales contract specifically provided for such liability and of course there has been *no performance by Cochise Bowl, Inc.*

Plaintiff concedes that any payments by the principal obligor would have served to reduce the defendant's obligation on his contract of guaranty and we agree. The question here however is not credit for performance of the principal obligor but credit for the proceeds from the sale of the collateral.

Sections 2845 and 2849 of the Civil Code giving a surety the benefit of all security held by the creditor for performance of the obligation and the power to require the creditor to proceed against such security does not provide defendant with any comfort.

Here the creditor has proceeded against the principal obligor and the security to the fullest extent possible. The result is a recovery which falls short of the total amount due, albeit one which exceeds the dollar limit of the guarantee.

The protection of Civil Code sections 2845 and 2849 may be waived by a guarantor. (*Wiener* v. *Van Winkle, supra.*)

The contract in question here provided that "This Guaranty is absolute, unconditional and continuing, and payment of the sums for which Guarantor is liable hereunder shall be made . . . notwithstanding that Brunswick holds reserves, credits, collateral, security or other guarantees against which it may be entitled to resort for payment, . . ."

We interpret this clause as a waiver of the provisions of Civil Code sections 2845 and 2849.

It would be a strange result indeed if, after waiving totally the protection of those statutes, the defendant could require Brunswick to exonerate him entirely because it resorted to other security and obtained only partial *satisfaction.*

The principal obligor, Cochise Bowl, Inc. at the time of the transaction in question was a newly formed corporation embarking on the operation of a bowling center. It was able to obtain from Brunswick a substantial amount of credit, as witness its acquisition of a quarter of a million dollars in equipment with a $2,000 down payment. It seems readily apparent that Brunswick as a condition precedent to extending this amount of credit insisted on additional security over and above the right of repossession under the conditional sales contract.

" [A]ny ambiguity in a contract of guaranty, concerning the lia-

bility of the guarantor, will be resolved in favor of protecting the creditor to the extent of the sum named therein; . . .'" (*Berg Metals Corp.* v. *Wilson,* 170 Cal.App.2d 559, at p. 571 [339 P.2d 869].)

█ We are persuaded that the trial court's interpretation of the agreement was sound and comported with the realities of the situation.

Civil Code section 1479 provides guidelines for the application of *voluntary* performance by a debtor who is under several obligations to a creditor.

In the case at bar there was no voluntary performance by the principal debtor for the reason that payment under compulsory process or by way of forced sale of collateral is not voluntary performance as envisioned by Civil Code section 1479. (*Ohio Elec. Car Co.* v. *Le Sage,* 198 Cal. 705 [247 P. 190].)

Furthermore, there was here but a single obligation. Thus, Civil Code section 1479 is not directly applicable. However, cases dealing with problems arising under that section state certain principles which can logically be applied to the problem here confronting us.

In *Ohio Elec. Car Co., supra,* the court held that where the performance of the primary obligor is involuntary a guarantor has no right to direct the application of the proceeds and the court is not obliged to apply them so as to exonerate third persons. It was stated there that the application could properly be made on the obligation for which the security was the more precarious.

Again in *Eisendrath* v. *Bank of America,* 118 Cal.App.2d 434, at p. 440 [258 P.2d 13], the court quoted with approval, language from *Consolidated Naval Stores Co.* v. *Wilson,* 82 Fla. 396 [90 So. 461, 21 A.L.R. 681]: "'. . . it would be inequitable and manifestly unjust to require the application of the proceeds of the mortgaged property to be applied first to the endorsed notes, for the whole purpose of the *additional security* would be destroyed by such application. (Italics added.)'"

We conclude that in the absence of a specific provision to the contrary in the contract of guaranty, proceeds from the sale of the equipment could only be applied to exonerate the limited guaranty to the extent that the proceeds of the sale exceeded the amount of that portion of the original debt not covered by the limited guaranty.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.