508 P.2d 112

**BRADEN MACHINERY CO., an Arizona corporation, Appellant,**

v.

**The VALLEY NATIONAL BANK OF ARIZONA, a national banking association, Appellee.**

**No. 1 CA–CIV 1726.**

Court of Appeals of Arizona, Division 1, Department A.

April 3, 1973.

Rehearing Denied May 8, 1973.

Review Denied June 12, 1973.

Rolle, Jones & Benton by F. Keith Benton, Yuma, for appellant.

Westover, Keddie & Choules by Douglas Keddie, Yuma, for appellee.

STEVENS, Judge.

In the trial court The Valley National Bank of Arizona, a national banking association, [the bank] was the plaintiff and Braden Machinery Co., a corporation, [Braden] was the defendant. The bank recovered judgment against Braden in the sum of $16,629.48 for the alleged conversion of two John Deere cotton pickers and Braden appealed. Reference will be made in this opinion to J. W. Olberg & Son as well as to J. W. Olberg, [both will be referred to as Olberg], as well as to Roy Robert Young [Young], who at all times material to this opinion was a vice president of the bank and the manager of the bank's Yuma office which was involved in this litigation.

Olberg was engaged in agriculture in the Yuma area, his operations included crops and cattle. Olberg owned a number of pieces of machinery, all of which appear to have been encumbered by either contracts of conditional sale or by chattel mortgages. At least a portion of these contracts and mortgages were held by the bank.

On 4 December 1963 Braden sold the two cotton pickers here in question to Olberg on a single conditional sales contract. After deducting the down payment there was a principal balance of $30,000.00. The deferred interest was calculated to be $2,925.00. The conditional sales contract then recited a balance of $32,925.00, payable $16,915.00 on 15 December 1964 and the balance on 15 December 1965. Braden promptly sold the contract to the bank, receiving $30,000.00 therefor.

Olberg did not make the December 1964 payment and he and the bank entered into an agreement extending the time for the first payment to 25 April 1965.

In the fall of 1965, the exact date is not clear, but it appears to have been in November 1965, at a time when no payments had been made on the conditional sales contract, Olberg purchased five cotton pickers from Braden and as part of the payment for the five cotton pickers Olberg traded in the two cotton pickers in question as well as three others. The bank was not then made aware of this transaction.

Thereafter Braden repaired and improved the two cotton pickers at which time no payments directed to be applied to this particular contract of conditional sale had been made to the bank.

In late 1965 Olberg's financial situation was precarious. The bank undertook an appraisal of his assets and the combined value of the two cotton pickers was fixed by the bank in the sum of $18,696.00.

Olberg and the bank negotiated the matter of Olberg's several debts to the bank seeking to arrive at a single figure to be

secured by all of the outstanding contracts of conditional sale, the two chattel mortgages and additional security.

In February 1966, during the process of conferences between Olberg and the bank, the bank learned of the November 1965 trade-ins of the two cotton pickers by Olberg to Braden.

The negotiations between the bank and Olberg culminated in a "revision agreement" dated 18 May 1966, of which we will say more later in this opinion.

At the trial Young was the only witness who testified. We find the following questions and answers in the reporter's transcript.

"Q. Did you ever make any effort to collect upon your security from Mr. Olberg?

"A. Well, the security of Mr. Olberg had been taken by Braden Equipment. Braden Equipment had sold the cotton pickers to other people. They refused to pay us for them.

"Q. As a matter of fact though after the 1966 Revision Agreement, it was until April of 1967 when the lawsuit was filed and nothing occurred in that period of time to realize upon your security with Mr. Olberg?

"A. We attempted to discuss it with Braden Equipment Co. and the statement was made by them that if we proceeded against them they would proceed against Mr. Olberg along with another fertilizer company and bring legal action against him.

"Q. And so you did nothing?

"A. We did nothing at that time.

        *    *    *    *    *    *

"Q. Why didn't you proceed against Braden Machinery then when that particular statement was made to you?

"A. From the indications there would be at least two major creditors proceed [sic] against Olberg which probably could cause other creditors to proceed against him at that time and might result in serious complications."

Young testified that the bank understood from Olberg that Braden would take care of the conditional sales contract and Braden's answers to the written interrogatories indicated that Braden believed that Olberg would take care of the contract.

The revision agreement, coupled with a 31 May 1966 addendum, fixed the combined principal and interest indebtedness from Olberg to the bank in the sum of $240,434.90. This sum together with accruing interest was to be paid in monthly installments beginning 1 June 1966. The schedule of payments was never met by Olberg.

The revision agreement listed the two promissory notes, each secured by chattel mortgage, and numerous contracts of conditional sale specifying the outstanding balance on each. Of all of these obligations only five antedated the conditional sales contract in question. These were outstanding contracts of conditional sales totaling $18,334.76. The next in overdue payment date was the conditional sales contract in question with a stated balance of $32,925.00.

The suit in question is one for the conversion of the two cotton pickers based upon the bank's title acquired by the Braden assignment of a conditional sales contract to the bank.

The suit was filed on 24 April 1967 and was tried to a jury on 22 December 1970. The judgment was entered on the bank's motion for a directed verdict after the Braden motion for a directed verdict had been denied and after Braden rested without presenting any evidence other than that introduced by the cross-examination of Young and the introduction of two of the bank's records, all during the bank's case in chief. The bank initially moved for judgment in the sum of $18,696.00, a figure which corresponds with the bank's late 1965 appraisal. The trial court first indicated that it would direct a verdict in

favor of the bank on the question of liability, leaving the amount of damages to the jury, and ultimately the trial court directed a verdict in favor of the bank in the sum of $16,629.48. The Braden answers to the written interrogatories had been admitted into evidence before the bank rested and set forth some of the details in connection with the November 1965 trade-in, improvements, and resale of the two cotton pickers. The arguments of counsel and the basis of the ruling of the trial court are not contained in the record.

## THE REVISION AGREEMENT

The revision agreement referred to the promissory notes which were secured by chattel mortgages and to the several contracts of conditional sales as "evidences of indebtedness". The agreement arrived at a sum total and provided for monthly installment payments as hereinbefore recited. It further provided:

"In the event of a default by BORROWERS in the payment or performance of any obligation owing from them to BANK, whether described herein or otherwise, BANK may, at its option notwithstanding any agreement contained in any document to the contrary, immediately declare any and all sums provided herein immediately due and payable.

\*    \*    \*    \*    \*    \*

"C. It is understood and agreed that the security documents and interests described in RECITAL 2 above shall remain in full force and effect, good, valid and existing *liens* on the property therein described for the purpose of securing the obligations as above described and herein modified." (Emphasis added).

As further security the revision agreement created a real estate mortgage and a chattel, livestock and crop mortgage. The revision agreement concluded as follows:

"EXCEPT for the modifications above stated, all of the remaining conditions of the original evidences of indebtedness and the security instruments therefor described herein as modified herein, shall remain in full force and effect, unchanged."

The revision agreement was silent as to the manner of the application of payments in relation to any of the numerous separate obligations which comprised the overall total sum. Olberg made some payments and he gave no directions in relation to the application thereof. The bank's ledger sheet showed but one acknowledged source of payment, a 12 August 1969 credit which designated the source as "equipment sale" in the sum of $30,000.00.

The ledger sheet as of the time that suit was filed showed that numerous payments had been made on interest and that the principal balance had been reduced to the sum of $190,985.81. The same ledger sheet disclosed that as of the time of trial the principal balance had been reduced to the sum of $80,129.64 as against the original principal balance of $240,434.90. No payment or sum was credited to any one particular obligation. We must bear in mind that the five contracts of conditional sale which predated the contract of conditional sale in question coupled with the contract of conditional sale in question totaled $51,259.76.

The bank's case rested upon its rights under the 4 December 1963 contract of conditional sale. If the full balance of the contract had been paid at the time of suit, or at the time of trial, then under the facts of this case, as a matter of law, the bank's retained title was extinguished and it had no claim against Braden arising out of Braden's November 1965 acceptance of the cotton pickers as trade-ins and subsequent sale thereof. At the time of the execution of the revision agreement Olberg had divested himself of all of his equity in the cotton pickers and he had no interest therein to pledge as security under the revision agreement. In its suit against Braden the bank did not assert any rights against Braden arising out of the revision agreement. In fact it was Braden who introduced the revision agreement and the

bank's schedule of payments thereunder into evidence.

## PAYMENT

Paragraph four of the bank's complaint alleged that except as to the modification of the due date of the first installment due under the contract of conditional sale "all of the remaining conditions and covenants in the original evidence of indebtedness remain in full force and effect, unchanged." In response thereto Braden answered as follows:

"For answer to paragraph IV, this answering defendant does not have sufficient knowledge or information to form a belief as to the truth of the allegations therein contained, and therefore denies the same."

The bank urges that the answer is not a proper pleading of the affirmative defense of payment under Rule 8(d), Rules of Civil Procedure, 16 A.R.S., and the Arizona case law. If the record contained no more and in face of Young's affirmative testimony that no payments were made on the contract of conditional sale, we would agree.

On the other hand, it is our opinion that Braden is entitled to apply to the evidence the applicable rules of law.

A debtor who owes a creditor several obligations, has the right to direct that the creditor apply payments to particular obligations. Webb v. Crane Company, 52 Ariz. 299, 80 P.2d 698 (1938); Valley National Bank of Phoenix v. Shumway, 63 Ariz. 490, 163 P.2d 676 (1945); and Cameron v. Sisson, 74 Ariz. 226, 246 P.2d 189 (1952). This Olberg did not do. The bank then had the privilege of applying each payment to such particular obligation as it selected. This the bank did not do. As to this right see Webb, Valley National Bank and Cameron. The rule of law under these circumstances is that the law applies each payment to the obligation oldest in point of time. Importers' & Exporters' Insurance Company of New York v. Fidelity and Deposit Company of Maryland, 45 Ariz. 237, 42 P.2d 409 (1935). Following this rule, more than the combined total of the six oldest obligations, including the conditional sales contract in question, having been paid by the time of trial, the debt evidenced by the 4 December 1963 contract of conditional sale had been paid. The bank could have protected itself by making specific allocations and failed to do so.

## THE BANK'S RETAINED TITLE

The case of Valley Chevrolet Company v. O. S. Stapley Company, 50 Ariz. 417, 72 P.2d 945 (1937), is of interest in this situation. Therein it was held that as between two parties in a simultaneous transaction the buyer can be both a conditional buyer and a chattel mortgagor and the seller can be both a conditional seller with a retained title and a chattel mortgagee. The case holds that where under separate and distinct transactions the conditional seller [here the bank as the assignee of the contract] enters into a later security agreement with the conditional buyer, taking as a pledge the property covered by the conditional sales contract, the conditional seller recognizes that title has passed to and stands in the name of the conditional buyer. At the time of the revision agreement Olberg had divested himself of all right, title and interest in the two cotton pickers and had no interest therein to pledge. Title retention in a conditional seller is a special statutory privilege and a conditional sales contract cannot cover personal property which was not sold as a part of the transaction out of which the conditional sales contract arose.

The bank had knowledge of the fact that Olberg had transferred his equity to Braden and was fearful that if it sued Braden for conversion prior to the execution of the revision agreement the financial consequences to Olberg might have been catastrophic and made the best of a bad sit-

uation in the drafting of the revision agreement. By the time of trial there had been a sufficient reduction in the overall debt from Braden to the bank to extinguish the obligation under the conditional sales contract in question.

## NOVATION

Braden strenuously urges that the revision agreement constituted a novation between Olberg and the bank. We do not find it necessary to rule on that contention.

We wish to make it clear that by this opinion we do not condone or approve of the Braden actions in the manner of his dealing with the two cotton pickers after the sale to Olberg and the negotiation of the conditional sales contract to the bank. At the same time we hold that he prevails as a matter of law.

The judgment is reversed with directions to enter judgment in favor of Braden.

DONOFRIO, P. J., and OGG, J., concur.