STATE BANK OF STREETER,
Plaintiff and Appellee,

v.

Duane NESTER, d.b.a. Streeter Livestock Feed and Supply, Clayton Wolff and Beverly Wolff, Defendants,

Boyd H. Williams, Defendant
and Appellant.

Civ. No. 10991.

Supreme Court of North Dakota.

March 19, 1986.

Gerald A. Kuhn, Napoleon, for plaintiff and appellee.

Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendant and appellant; argued by Terence J. Paulson.

LEVINE, Justice.

Boyd H. Williams appeals from a judgment against him for the unpaid balance on a promissory note which he cosigned. We affirm in part and reverse in part.

In March 1982 Duane Nester executed three renewal promissory notes to the State Bank of Streeter for three loans of $81,250.00, $50,750.00 and $18,750.00. Nester pledged the assets of his livestock feed and supply business as collateral for the loans. The Bank deemed this collateral

insufficient security and required Nester to obtain a cosigner. Nester's cosigner in the original transaction did not cosign the renewal notes. Therefore, at Nester's request, Williams cosigned the two notes for $50,750.00 and $18,750.00. The note for $81,250.00 was signed by Nester alone. There was no agreement governing the allocation of proceeds from the sale of collateral in the event of default.

After Nester defaulted, the Bank sued Nester and Williams for the entire balance of the notes and, by court order, sold the collateral securing the notes. The Bank applied the proceeds to satisfy in full the $50,750.00 note cosigned by Williams,[1] and to satisfy in part the $81,250.00 note signed solely by Nester. None of the proceeds was applied to the third note of $18,750.00 cosigned by Williams. Nester filed bankruptcy and the Bank subsequently recovered judgment against Williams on the $18,750.00 note that he had cosigned.

The issues on appeal are: (1) whether the trial court erred in finding Williams fully liable on the note he cosigned without affording him the benefit of the proceeds from the sale of collateral; and (2) whether Williams is entitled to subrogation to the Bank's right to any remaining unliquidated collateral upon his satisfaction of the judgment.

1.

## ALLOCATION OF PROCEEDS FROM SALE OF COLLATERAL

■ The Bank maintains that because it had a perfected security interest in the collateral prior to Williams' cosigning, "Williams had no right to any benefits from the collateral." We disagree. North Dakota Century Code § 22–03–12 clearly provides that a surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor at the time of entering into the suretyship contract, whether the surety was aware of the security or not. Conse-

1. The $50,750.00 note was satisfied in accordance with an independent agreement between the Bank and another lending institution.

quently, Williams was entitled to the benefit of the collateral securing the three notes and it is of no moment that the Bank had earlier perfected a security interest in the collateral.

■ On the other hand, Williams' assertion that NDCC § 22–03–12 requires that the collateral proceeds be used first to discharge his liability on the two notes and then be applied to the note signed solely by Nester is equally unpersuasive. NDCC § 22–03–12 protects Williams only upon Williams' payment of Nester's entire debt to the Bank, at which point Williams is subrogated to the Bank's rights and entitled to the benefit of the security. *Mid-Continent Supply Co. v. Adkins and Potter Drilling Corp.*, 229 F.2d 68 (10 Cir. 1956). To hold otherwise would inequitably permit Williams, without paying any portion of the debt on which he is surety, to direct that the security held for the satisfaction of Nester's entire debt be applied solely for Williams' benefit.

■ Williams also claims that NDCC § 9–12–07 mandates the Bank's allocation of the proceeds to the notes he cosigned. NDCC § 9–12–07 provides the schemata for allocation where a debtor owes several obligations "and does an act by way of performance" which is applicable equally to two or more of these obligations.

However, NDCC § 9–12–07 does not apply in this case because there has been no performance by Nester. NDCC § 9–12–06 provides that "performance of an obligation for the delivery of money only is called payment." NDCC § 9–12–07 applies only when a debtor does "an act by way of performance." A debtor performs when he voluntarily makes a payment to the creditor. *Brunswick Corporation v. Hays*, 16 Cal.App.3d 134, 93 Cal.Rptr. 635 (Cal.Ct. App.1971); *Gallatin Trust & Savings Bank v. Darrah*, 153 Mont. 228, 456 P.2d 288 (1969) (statutes identical to NDCC § 9–12–07 inapplicable to involuntary performance); *see generally* 15 Williston on Contracts § 1797 (3d ed. 1967); 70 C.J.S., *Payment*, § 51.

The funds applied by the Bank to reduce the loan balance did not come from a voluntary payment by Nester but rather via court-ordered liquidation of the collateral. This does not constitute voluntary performance. *Brunswick Corporation v. Hays, supra; Massachusetts Mut. Life Ins. Co. v. Paust*, 212 Minn. 56, 2 N.W.2d 410 (1942). Therefore, NDCC § 9–12–07 does not apply.

■ Where NDCC § 9–12–07 does not govern the application of proceeds from the sale of collateral, and there is no agreement requiring a specific application, the duty devolves on the court to make such application guided by the principles of equity and justice under the facts of each case, *Hargis Bank & Trust Co. v. Gambill*, 234 Ky. 538, 28 S.W.2d 769 (Ct.App.1930); *Orleans County Nat. Bank v. Moore*, 112 N.Y. 543, 20 N.E. 357 (1889); *see generally*, Annot., 57 A.L.R.2d 855, § 7[b] (1958). A decision of a trial court rendered after weighing the equities of a case will not be reversed unless an abuse of discretion is affirmatively established. *Shervold v. Schmidt*, 359 N.W.2d 361 (N.D.1984).

Courts are divided in their application of the principle of equitable allocation. Where a debtor owes several debts to a creditor, all of which are secured by the same collateral, some courts hold it is equitable to distribute the proceeds from the collateral ratably to the debts. *E.g., First Nat. City Bank v. Kline*, 439 F.Supp. 726 (S.D.N.Y.1977); *Hargis Bank & Trust Co. v. Gambill, supra; Orleans County Nat. Bank v. Moore, supra; see F.D. Cline Paving Co. v. Southland Speedways, Inc.*, 250 N.C. 358, 108 S.E.2d 641 (1959); *Bancroft v. Granite Savings Bank & Trust Co.*, 114 Vt. 336, 44 A.2d 542 (1945); *see also Merchants Mut. Bonding Co. v. Appalachian Ins. Co.*, 556 F.2d 899 (8 Cir. 1977). Others hold that it is equitable to satisfy the creditor's least secure debt first. *E.g., Ohio Electric Car Co. v. Le Sage*, 198 Cal. 705, 247 P. 190 (1926); *Bank of Georgia v. Card*, 84 Ga.App. 142, 65 S.E.2d 841 (1951); *see generally* 60 Am. Jur.2d, *Payment*, § 106. We believe a rat-

able distribution more fairly balances the interests of all parties under the circumstances presented in the instant case.

◦ ■ Nester's collateral was given to secure all three notes. The two notes Williams cosigned indicated they were secured, and referred to the prior security agreement. The Bank knew the collateral was insufficient to cover Nester's indebtedness. The Bank was in a superior position to guard its interests and failed to do so by accepting one note without a cosignature. It would be inequitable to visit upon Williams the consequences of the Bank's omission.

We therefore hold that the proceeds from the sale of collateral should be distributed ratably among the three notes. Consequently, the trial court misinterpreted the law, and therefore abused its discretion, *Heller v. Heller*, 367 N.W.2d 179 (N.D.1985), in holding Williams fully liable to the Bank on the $18,750.00 note.

■ Despite our conclusion that the proceeds should be applied ratably, it is necessary that we address Williams' argument that under NDCC §§ 22–03–06(3) and 41–03–73(1)(b) the Bank's failure to first apply the proceeds to the $18,750.00 note fully exonerated him from any liability on that note.

NDCC §§ 22–03–06(3) and 41–03–73(1)(b) provide that a surety be exonerated *to the extent* that he is prejudiced by any act of a creditor which impairs his remedies and rights in the collateral.

We have concluded that it is equitable to distribute the proceeds ratably among the three notes. Consequently, Williams is exonerated only to the extent that the Bank's failure to apply the proceeds ratably was prejudicial to his remedies and rights in the collateral. The extent of this prejudice is not the entire amount due on the note, as Williams argues, but rather the difference between his full liability of $18,750.00 and his liability which remains after a ratable distribution of the proceeds has reduced the amount he owes on the note. Consequently, Williams is not fully exonerated

from liability to the Bank on the $18,750.00 note.

■ Williams also contends that the proceeds should be applied first to the $18,-750.00 note because he is a gratuitous surety and because "a gratuitous surety is a favorite of the law ... the contract [of suretyship] must be strictly construed so as to impose on the surety only the burdens clearly within its terms and it cannot be extended by implication, presumption, or construction." *Watkins Products, Inc. v. Anhorn*, 193 N.W.2d 228 (N.D.1971). Assuming arguendo that Williams was a gratuitous surety, we do not believe this status confers the benefits he claims. We are not construing a surety contract but merely applying the law governing how collateral may be allocated. The favor with which the law regards sureties cannot affect the determination of collateral questions which, though indirectly touching the interests of the sureties, do not arise out of the contract of suretyship itself. *Warner v. Connecticut Mut. Life Ins. Co.*, 109 U.S. 357, 3 S.Ct. 221, 27 L.Ed. 962 (1883). We conclude the gratuitous surety rule does not bestow upon Williams any greater benefits than those we have held he is entitled to receive.

2.

**THE TIMING OF SUBROGATION**

■ Williams contends that he is entitled to have the judgment amended to provide that upon his payment to the Bank of the judgment, plus costs and interest, he is subrogated to the Bank's right to any remaining unliquidated collateral. *See* NDCC § 22–03–11. We disagree.

Williams' right of subrogation to the Bank's right in the collateral does not arise until Nester's debt is paid in full, even though Williams' payment of the judgment may be the full amount for which he is liable as surety. *Rouse v. Zimmerman*, 55 N.D. 94, 212 N.W. 515 (1927); *see generally* 10 Williston on Contracts § 1269 (3d ed. 1967); Stearns, Law of Suretyship, § 11.2 (5th ed.); 73 Am.Jur.2d, *Subrogation*, § 30; 83 C.J.S., *Subrogation*, § 10.

The trial court found that there remains on the note signed by Nester alone an unpaid balance of $17,601.24 in principal and interest. The Bank need not part with any of the remaining collateral while Nester's debt remains unpaid. To permit Williams to pay only part of Nester's debt and yet appropriate the remaining collateral solely for his advantage would deny the Bank the benefit of its efforts to adequately secure its loans to Nester.

Accordingly, we reverse the trial court's judgment and remand so that the proceeds from the sale of collateral may be applied ratably to the three notes. The trial court's order denying Williams' motion for amended findings of fact is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.