924 P.2d 1040

**NESTLE ICE CREAM COMPANY, formally known as Nestle Dairy Systems, Inc., Plaintiff–Appellee,**

v.

**Walter FULLER, and Christ M. Rousseff, Defendants–Appellants.**

No. 1 CA–CV 95–0315.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 5, 1996.

Kahn, Freeman & LaForge, P.A. by Lyndon B. Steimel, Phoenix, for Plaintiff–Appellee.

Jennings, Strouss & Salmon, P.L.C. by James M. Ackerman and Robert D. Haws, Phoenix, for Defendants–Appellants.

## OPINION

THOMPSON, Judge.

Defendants-Appellants Walter Fuller and Christ M. Rousseff (defendants) owned a piece of real property located in Maricopa County, Arizona, which they pledged in May of 1993 as security for a debt in the amount of $800,182.00 owed by Dixie Ice Cream, Inc. (Dixie) to Plaintiff–Appellee Nestlé Ice Cream Company (Nestlé), as evidenced by a promissory note (note 2). The note was to be repaid by Dixie over an eleven-month period. The defendants had no personal liability for the debt, but they signed deeds of trust giving Nestlé the right to foreclose on their real property in the event of Dixie's default under this note.

In addition to that debt, Dixie owed other monies to Nestlé under a promissory note for $300,000.00 (note 1), which it had given in 1989. Also, Dixie continued to incur debt on an ongoing basis under an open account it had with Nestlé.

The deeds of trust on the defendants' property were provided as security only for the debt owed under note 2. However, this debt, as well as all the other debts Dixie owed to Nestlé, were also secured by the assets Dixie owned. In instruments executed and recorded in 1992, Dixie had pledged its own accounts receivables, inventory, fixtures, and equipment to Nestlé to cover all past, present and future debts. Note 2 reiterated the pledge of Dixie's assets as security for that particular debt.

After making four monthly payments on note 2, Dixie defaulted on the note and on its other obligations to Nestlé. At the time of default, Dixie owed Nestlé $132,049.55 under note 1, $530,132.18 under note 2, and $1,039,-903.30 as the balance on its open account for a total of $1,721,065.42.

Dixie filed for Chapter 7 bankruptcy. Because Nestlé was Dixie's principal debtor and held security interests in its assets, Nestlé was entitled to liquidate Dixie's assets from which it obtained approximately $1,020,-000.00. Nestlé applied that entire amount to the open account balance. It applied none of the proceeds to the balance owed under note 2.

After liquidating Dixie's assets, Nestlé filed suit to foreclose the deeds of trust on the defendants' property that had been given as the additional security for note 2. The defendants opposed the foreclosure arguing that the proceeds Nestlé collected in liquidating Dixie's assets were required to be applied first to pay off the note secured with the deeds of trust. Nestlé contended that, under these circumstances, it was entitled to apply the proceeds to whichever of Dixie's debts it chose.

In ruling on cross-motions for summary judgment, the trial court found in favor of Nestlé. The trial court found that there were no unresolved material issues of fact. The court concluded that Nestlé was entitled to apply the proceeds to whichever of the debts it chose under applicable Arizona law because the proceeds received were properly liquidated assets, none of the written instruments directed how payment was to be applied, and there was no evidence of waste or

misapplication of the liquidated proceeds. Accordingly, after finding that the amount presently due under note 2 for principal, accrued interest and other appropriate charges was $612,599.81, the trial court granted foreclosure of the deeds of trust. The trial court also granted Nestlé's request for attorneys' fees made pursuant to Ariz. Rev.Stat. Ann. (A.R.S.) § 12–341.01(A), and awarded it $17,000.00. The defendants filed a timely notice of appeal from the trial court's rulings, raising the following issues:

1. Whether the defendants were entitled to application of any of Dixie's liquidated assets to pay off note 2;

2. Whether the trial court erred in excluding extrinsic evidence that the parties had agreed the liquidated assets would be applied first to pay off note 2; and

3. Whether the trial court erred in awarding attorneys' fees against the defendants.

## DISCUSSION

█ In reviewing the granting of a motion for summary judgment, we must view the facts in a light most favorable to the party opposing the judgment. *Hartford Accident & Indem. Co. v. Federal Ins. Co.,* 172 Ariz. 104, 107, 834 P.2d 827, 830 (App.1992). Our task is to determine whether there is a genuine issue of disputed material fact, and, if not, whether the trial court correctly applied the substantive law. *Matter of Estate of Johnson,* 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991).

█ At the outset, we find that the trial court erred in concluding that this case is controlled by existing Arizona law. We are aware that Arizona courts have repeatedly recognized that a debtor who makes a payment has a right to direct how the payment shall be applied and that, if he gives no direction, the creditor has the right to make the application as he sees fit. *See, e.g., Cameron v. Sisson,* 74 Ariz. 226, 246 P.2d 189 (1952); *Valley Nat'l Bank of Phoenix v. Shumway,* 63 Ariz. 490, 163 P.2d 676 (1945); *Webb v. Crane Co.,* 52 Ariz. 299, 80 P.2d 698 (1938); *Chudzinski v. Chudzinski,* 26 Ariz.

App. 130, 546 P.2d 1139 (1976); *Braden Machinery Co. v. Valley Nat'l Bank of Arizona,* 19 Ariz.App. 447, 508 P.2d 112 (1973). Indeed, our supreme court noted that "[n]either sureties nor guarantors have the right to control the application which either the debtor or the creditor makes of the payment." *Shumway,* 63 Ariz. at 497, 163 P.2d at 679. (Citations omitted.)

█ However, the above-cited common law rule relates only to application of payments that have been voluntarily made by the debtor; it has no application where the payment has been involuntarily made, such as through execution or judicial sale. *See O'Dell v. United States,* 326 F.2d 451 (10th Cir.1964); *In re Bulk Sale of Inventory,* 6 Kan.App.2d 579, 631 P.2d 258 (1981); 60 Am.Jur.2d *Payment* § 103 (1987). Here, the proceeds Nestlé obtained in liquidating Dixie's assets were clearly involuntary payments.

Arizona courts have not addressed what rule to apply where payments have been made involuntarily. Other jurisdictions are divided on this question:

> [T]here is a split of authority as to whether the creditor has a right to make an application of payments or whether the creditor must defer to the court to make such application. And some courts hold that neither the debtor nor the creditor has the right to direct the application of payments and the court must make the application. . . .

> A court applies involuntary payments according to principles of equity and justice, according to intrinsic justice or the equity of the case, according to the rights and priorities of the parties concerned, or ratably to all debts, and in such a way as will best maintain and protect the rights of all the parties.

60 Am.Jur.2d *Payment* at § 103. (Footnote omitted.)

█ In *United States v. Transamerica Ins. Co.,* 357 F.Supp. 743, 748 (E.D.Va.1973), a Virginia district court examined this question at some length and noted that courts tend to take one of two alternative ap-

proaches in their attempt to protect the rights and priorities of the parties:

> Some courts have held that where there is a large indebtedness and a lesser amount of money to pay the indebtedness, a court should apply payments in such a manner as to protect the creditor to the greatest extent possible. Thus, a creditor should be allowed to recover the full portion of a debt which is secured by a surety's promise and to apply other funds to unsecured portions of the debt. *E. g. Gallatin Trust & Savings Bank v. Darrah,* 153 Mont. 228, 456 P.2d 288 (1969); *Ohio Electric Car Co. v. LeSage,* 198 Cal. 705, 247 P. 190 (1926); *Pope v. Transparent Ice Co.,* 91 Va. 79, 20 S.E. 940 (1895). Other courts, however, have held that involuntary payments are to be appropriated ratably to the entire debt. *E. g., Bancroft v. Granite Savings Bank & Trust Company,* 114 Vt. 336, 44 A.2d 542 (1945); see ALI, Restatement of the Law of Contracts § 393, Illus. 1.

*Transamerica Ins. Co.,* 357 F.Supp. at 748. In this case, however, the involuntary payments were unique. The payments were the proceeds of collateral which Dixie had given to Nestlé as security for all of the debts it owed to it and which Nestlé obtained through various liquidation procedures. In this kind of situation, there remains a split of authority as to whether to distribute the proceeds from the collateral ratably to the various debts secured by it or to hold that it is equitable to satisfy the creditor's least secure debt first. *See State Bank of Streeter v. Nester,* 385 N.W.2d 95 (N.D.1986) (citing cases for both positions and concluding that a ratable distribution more fairly balances the interests of all parties under the circumstances presented).[1]

The majority of jurisdictions hold that the proceeds should be applied ratably:

> It is frequently stated that neither the debtor, the creditor, nor a surety may direct the application of the proceeds of

collateral which have been involuntarily obtained, and that the court will make the application in such a manner, in view of all of the circumstances of the particular case, as will best protect the interest of all the parties. Consequently, the establishment of any definite rule pertaining to all cases involving the application of such proceeds is impossible; however, in the absence of countervailing equities, the majority of the cases hold that the proceeds of collateral which have been obtained through judicial proceedings or other involuntary means will be applied pro rata among the debts for which the collateral was security so that a debt on which a surety or guarantor is bound will receive its part of the payment.

L.S. Rogers, Annotation, *Application of Payments as Between Debts for Which a Surety or Guarantor Is Bound and Those for Which He Is Not,* 57 A.L.R.2d 855, 881 (1958); *see, e.g., Hargis Bank & Trust Co. v. Gambill,* 234 Ky. 538, 28 S.W.2d 769 (1930); *Nester,* 385 N.W.2d 95 (N.D.1986); *Bancroft v. Granite Sav. Bank & Trust Co.,* 114 Vt. 336, 44 A.2d 542 (1945). "The right of a creditor to apply a payment as he may wish presupposes that the debtor had a chance to direct how the payment should be applied and failed to do so." *Bancroft,* 44 A.2d at 547.

In cases such as this one, where the proceeds of collateral have been obtained through judicial proceedings or other involuntary means, we find that the majority view of ratable distribution "more fairly balances the interests" of the parties. *Nester,* 385 N.W.2d at 97–98. Accordingly, we hold that under these circumstances the court is to make the application of payment with a view toward protecting the interests of all the parties. Such a distribution will usually result in the proceeds being applied pro rata among the debts for which the collateral was security. Because the trial court did not make the application of payment here, we reverse and remand for it to do so.[2]

---

**1.** Nestlé argues that we should not consider the issue of ratable distribution of the payments because it was not raised below. We disagree. Where neither party has argued the proper rule of law, we will not be precluded from consider-

ing what it is. *See, e.g., Word v. Motorola, Inc.,* 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983).

**2.** The defendants contend that the proceeds from the collateral Nestlé recovered in liquidating Dix-

Rules relating to the application of payments, such as those discussed above, are used only if the parties have not reached an agreement concerning where the payments are to be applied. *See, e.g., Crown Life Ins. Co. v. LaBonte,* 111 Wis.2d 26, 330 N.W.2d 201 (1983) (proceeds of foreclosure sale applied in manner which had been agreed upon by the parties). The trial court correctly observed, and it is undisputed by the parties, that none of the written instruments executed by Nestlé, Dixie or the defendants contained any provision concerning the priority of payment of any of the debts. The defendants contend, however, that the trial court should have considered extrinsic evidence of an agreement among the parties that the debt secured by defendants' deeds of trusts would be the first to be paid should there be insufficient funds to cover all of Dixie's debts owed to Nestlé. They contend that the affidavit and deposition testimony of Rousseff creates an issue of fact as to whether the parties orally agreed at the time the documents were negotiated and executed that the note 2 debt would be paid down first in the event of liquidation of Dixie's assets. In his testimony, Rousseff stated that when he attended meetings with Nestlé personnel and Dixie's president concerning these financial matters, he made it clear that he and Fuller were providing the additional security for the note 2 debt with the understanding that it would be the first debt to be paid with any proceeds received for the payment of debt.

We agree that the trial court erred in failing to consider this extrinsic evidence, and we conclude that the evidence creates an issue of material fact requiring trial. As explained in *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.,* 140 Ariz. 383, 393, 682 P.2d 388, 398 (1984):

> [T]he interpretation of a negotiated agreement is not limited to the words set forth in the document. Evidence on surrounding circumstances, including negotiation, prior understandings, subsequent conduct and the like, is taken to determine the parties' intent with regard to integration of the agreement; once the court is able to decide what constitutes the "agreement," the evidence may be used to interpret the meaning of the provisions contained in the agreement.

Rousseff's testimony did not contradict the terms of the written instruments; his testimony concerned additional terms that he claims were agreed upon but did not make their way into the written agreement. This evidence had probative value in determining the parties' intent and should not have been excluded. *See Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 156, 854 P.2d 1134, 1142 (1993). Clearly, Rousseff's testimony concerning what was discussed and agreed to at the meetings was contradicted by the affidavit testimony of several Nestlé employees. Moreover, Dixie's president testified at his deposition that he had no memory of any discussion about priority in the application of payments to the several debts. Nevertheless, the significance of Rousseff's testimony requires credibility determinations and the weighing of evidence, matters that are not appropriate for determination on summary judgment. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Further, whether the defendants' giving of the additional security on note 2 was conditioned upon that debt being paid down first with any liquidation proceeds is a question of fact which precludes the granting of summary judgment for Nestlé.

The defendant's final argument is that the trial court erred in granting attorneys' fees against them pursuant to A.R.S. § 12–341.01(A). We vacate the trial court's award of attorneys' fees because Nestlé is no longer the successful party. Further, we deny both parties' requests for attorneys' fees on appeal under A.R.S. § 12–341.01(A) because neither party has prevailed on the

---

ie's assets should have been applied solely to the note secured by the deeds of trust. The defendants rely on two cases for this proposition, *Warren v. Washington Trust Bank,* 92 Wash.2d 381, 598 P.2d 701 (1979) and *First Fed. Sav. and Loan Assoc. of Pittston v. Reggie,* 376 Pa.Super. 346, 546 A.2d 62 (1988). We find both cases to be factually distinguishable. Neither case deals with the situation we have here, where the collateral secures several debts, including the one for which the sureties pledged additional security, and where the issue is how the proceeds from the collateral should be applied among the various debts.

merits of the underlying claims. Although there are circumstances in which a party can receive fees for achieving reversal of summary judgment, this appeal may not be deemed a "separate unit" under *Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 391–94, 710 P.2d 1025, 1046–49 (1985).

## CONCLUSION

For the foregoing reasons, we reverse the trial court's grant of summary judgment and remand to the trial court for further proceedings. A material issue of fact precluding summary judgment is presented as to whether it was agreed by the parties that the proceeds Nestlé received in liquidating Dixie's assets should be applied first to the debt owed under note 2. Should that issue be resolved against the defendants by the trier of fact, the court will be required to consider the equities in the case to determine whether a ratable distribution among the three debts owed by Dixie to Nestlé should be made.

CONTRERAS, P.J., EHRLICH, JJ., concur.