BERCH, Judge,
dissenting.
¶ 32 I respectfully dissent. The question is not, as the majority correctly resolves, whether Childress ultimately retained ownership of the vehicle when Clark’s financing fell through (it did) or even who owned the vehicle when Nationwide issued the check to Shawn Clark. Instead, the question is whether Nationwide acted reasonably in paying the car’s apparent owner for damages to the vehicle caused by a Nationwide insured. Indeed, one might pose the question as whether Nationwide acted so wi reasonably in paying Clark that it should have to pay twice for the same damage.
¶ 33 The majority maintains that this issue was not adequately preserved. Supra ¶¶ 27-30.[4] Even if that were true, a trial court nonetheless may not enter summary judgment unless the moving party is entitled to judgment as a matter of law. See Ariz. R. Civ. P. 56.[5] In this case, Childress was not entitled to judgment, for even if Childress owned the vehicle, the court must still analyze the effect of ownership. By affirming the grant of summary judgment, the majority concludes that it necessarily follows that Nationwide must pay Childress for the damage to the vehicle, after having already paid Clark for it. Supra ¶ 31. To my way of thinking, however, Childress’ ownership simply means that Childress has the right to recover from someone — Nationwide or Clark — for the damage to the vehicle. The finding would not entitle it to recover against Nationwide unless Childress also showed that Nationwide acted unreasonably in turning over the property damage check to one whom Childress cloaked with apparent ownership. See Orme School, 166 Ariz. at 309 n. 11, 802 P.2d at 1008 n. 11 (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2728 (1983)) (“[courts] can deny summary judgment even where there is apparently no genuine dispute over any material fact”). We therefore must reverse.
¶ 34 The minimal record before us shows that on July 26, 1996, Childress, facilitated Clark in driving the Skylark in question off the dealership’s lot, to all outward appear- *461 anees the owner of the car. Our supreme court has called this tactic a “ploy ... known in the [car sales] trade as ‘getting the car over the curb.’ ” Cavazos, 104 Ariz. at 542, 456 P.2d at 912. Rather than leaving the traditional “dealer plates” on the car to alert others that the car belonged to the dealership and not the driver, Childress provided a temporary plate and registration that designated Clark the “owner” of the vehicle. In addition, Clark had signed an application for an Arizona certificate of title and had obtained insurance on the vehicle. Had Nationwide inquired, no documents in or about the vehicle would have indicated that Chil-dress had an interest in the car. The title was issued to Enterprise Leasing Company of Phoenix, the registration application listed Shawn Clark, and the lien holder was listed as SunStar Acceptance Corporation.
¶ 35 Two days after driving the car from the lot, Clark was rear-ended by Nationwide’s insured. Two days later, Nationwide paid Clark, the apparent owner of the car, for the damage. The question is whether it was reasonable in doing so.
¶36 The majority instead analyzes who owned the car and wrestles with the applicability of Heltzel and Cavazos, two cases governing the proper interpretation of purchase orders and conditional sales agreements as between the parties to those agreements. The issue in this case differs, and therefore the cases, while instructive, do not control. Here the issue is whether a third party, not privy to the agreements, acted reasonably in Viewing Shawn Clark as the owner of the vehicle, in light of the indicia of ownership with which Childress vested him. I reject the proposition inherent in the majority’s analysis that an insurer pays a routine claim at its peril unless it obtains and properly interprets lengthy and ambiguous sales contracts,[6] when all other signs indicate that the driver owns the car.[7] Such a requirement puts the burden on a stranger to the contracts to decipher the transaction and thwarts the public policy of encouraging prompt, good-faith settlement of claims.
¶ 37 The question before us is not whether Childress should recover for the damage to its car. It should. The question is whether it should recover from Nationwide, a company that made a good-faith payment of damages to one whom Childress cloaked with apparent ownership, or from Clark, the one with whom Childress voluntarily entered into the transaction that put him in possession of the car. As a policy matter, it seems that, as between Childress and Nationwide, Childress should bear the loss occasioned by Clark’s wrongful act because Childress chose to deal with Clark, Childress was in a better position to protect itself from the harm that occurred, and Childress structured the transaction to make Clark appear to be the owner of the vehicle. It could have verified Clark’s credit before turning the car over to him, left dealer plates on the car, kept title in its name rather than registering it in Clark’s, or, most simply, not allowed him to drive off the lot with the car until the sale had been finalized.
¶ 38 The issue does not hinge on the interpretation of the contracts or even an assess *462 ment of who owned the vehicle at the moment Nationwide tendered its check. The case turns instead on whether Nationwide acted unreasonably in tendering the cheek to Clark. This determination involves an assessment of facts, a matter inappropriate for determination on summary judgment. I would not, as the majority asserts, “surprise [the parties] by deciding their case on an issue they did not present,” supra ¶29; I would reverse and allow a jury to decide this case.

. I would find the issue adequately preserved. This theory was raised in the answer, which affirmatively alleged estoppel, accord and satisfaction, and "payment." Appellants also alleged that Clark was paid for the damages Plaintiffs claimed and suggested that Childress should collect from him. In addition, they asserted that Plaintiff's [Childress's] "damages may have been caused by the acts and conduct of individuals ... not ... named as parties.” And while I agree with the majority that the summary judgment motions focused on the ownership of the vehicle, Appellants sufficiently raised their claim that Clark appeared to own the vehicle to preserve the issue. For example, they argued that "Nationwide had a legitimate basis to pay Clark” based on his right to possession of the vehicle and indicia of ownership such as the registration and plates, coupled with lack of notice that anyone else claimed ownership. See, e.g., Defendants’ Motion for Summary Judgment, IR 14 pp. 2-3; see also Plaintiff's Response to Defendants' Motion for Summary Judgment and Plaintiff’s Cross-Motion for Summary Judgement, IR 18 p. 7 (agreeing that key issue is whether Clark was vested with an "immediate right of possession” by Childress); Defendant's Reply in Support of Their Motion for Summary Judgment, IR 20 p. 4 (presenting argument that “a party does not need to be the holder of 'legal title' ” to be considered the owner of a vehicle); Plaintiff's Reply in Support of its Cross-Motion for Summary Judgment, IR 21 p. 4, IR 20 p. 3, and IR 18 pp. 6-7 (addressing Childress’s defense that Clark had no right of possession because he made fraudulent statements in the application and any permission was revoked on the 28th, though the revocation was not communicated to Nationwide); etc. Even if the question were not adequately preserved, however, I nonetheless would find that Childress was not entitled to judgment as a matter of law, and the trial court therefore erred in granting summary judgment. See Orme School v. Reeves, 166 Ariz. 301, 309 n. 11, 802 P.2d 1000, 1008 n. 11 (1990).

. See also Word v. Motorola, Inc., 135 Ariz. 517, 520, 662 P.2d 1024, 1027 (1983) (reversing grant of summary judgment on ground not raised by parties; holding that a reviewing court is not precluded from determining the proper rule of law to be applied in a case, even if neither party raised the issue on appeal) (citing State Consol. Publ'g Co. v. Hill, 39 Ariz. 163, 167, 4 P.2d 668, 669 (1931), and Wagner v. Coronet Hotel, 10 Ariz.App. 296, 300, 458 P.2d 390, 394 (1969)); Nestle Ice Cream Co. v. Fuller, 186 Ariz. 521, 524 n. 1, 924 P.2d 1040, 1043 n. 1 (App.1996).

. The "Car Purchase Agreement” calls Clark the "purchaser” and the "Arizona Motor Vehicle Sales Contract and Disclosure Statement” calls Clark the "buyer” of the Skylark. The latter provides that "[y]ou have today purchased ... the following vehicle.” Although the contract indicates that the company retained a security interest in the vehicle, many people drive vehicles in which a finance company retains a security interest, yet consider themselves “owners” of the vehicles.
The contract also provided that, as would an owner, Clark bore the risk of loss on the vehicle and had to obtain insurance for it. That the purchase agreement contained a term stating that the sale was conditioned upon financing seems not important to a third party. The contract will continue to contain that term even if financing is obtained. The provision therefore does not necessarily alert a third party that financing has not been obtained.
Finally, and most critically, even if Nationwide would have interpreted the contracts to mean that Childress owned the car, the record is clear that Nationwide never saw these documents before issuing the check to Clark.

. Clark possessed the car, carried insurance on it, and carried appropriate documentation as the owner, including the application for the certificate of title. In addition, the car’s "temporary registration” license plate was issued to him. The record does not appear to reflect how Nationwide would have been put on notice that Childress claimed ownership of the vehicle, since SunStar Acceptance Corporation, not Childress, is listed as the lien holder of record.